**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Jonathon Marc SUTTER, Defendant–
Appellant.**

**No. 02–50282.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 16, 2003.

Filed Aug. 25, 2003.

on civilians are, however, contrary to both federal and state laws.

Ross E. Viselman, San Diego, CA, for the defendant-appellant.

Carol C. Lam, United States Attorney, Francisco J. Sanchez, Jr., Assistant United States Attorney (on the brief), Roger W. Haines, Jr., Assistant U.S. Attorney (at oral argument), San Diego, CA, for the plaintiff-appellee.

Before: TASHIMA, BERZON, and CLIFTON, Circuit Judges.

BERZON, Circuit Judge.

The tick-tock of the Speedy Trial Act clock is difficult to measure when the parties allow a pre-trial discovery motion to pend indefinitely in the absence of any live discovery dispute. We conclude that where a discovery motion is pending on the docket, but the district court is neither awaiting additional submissions nor has indicated that the motion requires a future hearing, the discovery motion is "under advisement" under 18 U.S.C. § 3161(h)(1)(J), and a maximum of thirty days can be excluded under that provision.

On the unique facts of this case, however, there was no Speedy Trial Act violation. We also reject Sutter's challenge of the district court's denial of his motion to suppress evidence retrieved during a border search.

## I. BACKGROUND

Jonathon Marc Sutter appeals from a conditional guilty plea, challenging the district court's denial of his suppression motion, as well as from the denial of his motion to dismiss under the Speedy Trial Act.

### A. The Border Search

The events leading to Sutter's arrest took place at the United States port of entry at Calexico, CA. A primary inspection agent, Agent Jackson, asked Sutter several questions regarding his citizenship and his vehicle. Agent Jackson then asked Sutter to open the trunk, but Sutter stated that he could not find the button inside the car which opened the trunk, nor did he possess the trunk key. Agent Jackson thereupon sent Sutter to a secondary inspection area, where Custom Inspector Hernandez further questioned him. A narcotics dog alerted to the trunk of Sutter's car, whereupon Inspector Hernandez pressed the trunk release button on the driver's side door, opening the trunk and revealing marijuana.

### B. Proceedings Below

The government filed an indictment charging Sutter on September 12, 2001, and arraigned him on September 18. Because Sutter's Speedy Trial Act claim depends on the intricacies of the procedural history, we describe the timeline in some detail.

On October 22, 2001, Sutter filed several motions, including a motion to compel discovery, a motion to suppress the evidence obtained from his trunk, a motion to suppress post-arrest statements, and a motion to dismiss based on *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).

On November 13, 2001, the district court (Judge Bryan)[1] heard the motions. Judge Bryan denied the motion to dismiss, denied the motion to suppress evidence due to an illegal search, and, because the necessary government witnesses were not

---

1. The pre-trial proceedings in this case were heard by multiple judges, including six different out-of-district judges, presumably because the large caseload in the Southern District of California has required such assistance. The judicial discontinuity may well have contributed to the confusion surrounding the status of the discovery motion at various times.

present, continued until December 6, 2001, the suppression hearing regarding the post-arrest statements. The discovery motion was, according to the district court docket, granted in part and continued in part. The parties dispute, however, whether there were actually any live discovery issues pending after the hearing.

On December 6, 2001, as part of his attempt to negotiate a plea with the prosecutor, Sutter withdrew his motion to suppress the post-arrest statements. The district court (now Judge Rothstein) set a motions *in limine* hearing for January 14, 2002, and a trial date for January 15. At this point, the remaining pending pretrial motions included, at most, only the motion to compel discovery. The district court confirmed with both the government and Sutter that the discovery motion was still pending.

The trial was thereafter continued, at Sutter's request. The motion *in limine* hearing was rescheduled for February 25, and the trial for February 26. No hearing was ever set for the discovery motion.

On February 12 Sutter filed a motion to dismiss the indictment because of a Speedy Trial Act violation. The motion to dismiss was denied by Judge Real. Sutter subsequently entered a conditional guilty plea.

## II. ANALYSIS

### A. Border Search

■ We may quickly dispose of Sutter's claim that the customs agents had no authority to search his trunk absent reasonable cause. Sutter contends that the search was not a "border search" governed by 19 U.S.C. § 1581 but rather, because he had technically entered the United States, a search not at the border and therefore governed by 19 U.S.C. § 482. The search was undeniably a border search.

■ The border search doctrine is a narrow exception to the Fourth Amendment prohibition against warrantless searches without probable cause. *See United States v. Molina–Tarazon*, 279 F.3d 709, 712 (9th Cir.2002). Pursuant to this exception, codified at 19 U.S.C. §§ 1581 and 1582,[2] "routine searches of persons and their effects entering the country may be conducted without any suspicion whatsoever." *Molina–Tarazon*, 279 F.3d at 712. Sutter advances no argu-

---

**2.** Section 1581 provides:

(a) Customs officers

Any officer of the customs may at any time go on board of any vessel or vehicle at any place in the United States or within the customs waters or, *as he may be authorized, within a customs-enforcement area* established under the Anti–Smuggling Act [19 U.S.C.A. 1701 et seq.], or at any other authorized place, without as well as within his district, and examine the manifest and other documents and papers and examine, inspect, and *search the vessel or vehicle and every part thereof* and any person, trunk, package, or cargo on board, and to this end may hail and stop such vessel or vehicle, and use all necessary force to compel compliance.

(Emphasis added). Section 1582 authorizes the Secretary of the Treasury to prescribe regulations for the search of persons and baggage.

Although by its terms, § 1581 is not limited to border searches, courts have limited § 1581's "broad grant of authority to conduct searches without cause to border searches, because otherwise the statute's unlimited search authority would conflict with the requirements of the [F]ourth [A]mendment." *United States v. Sandoval Vargas*, 854 F.2d 1132, 1135 n. 4 (9th Cir.1988), *criticized on other grounds by United States v. Taghizadeh*, 41 F.3d 1263, 1266 n. 3 (9th Cir.1994); *see also DeVries v. Acree*, 565 F.2d 577, 580 (9th Cir.1977) (Kilkenny, J., dissenting) (cited approvingly in *Taghizadeh*, 41 F.3d at 1266) (tracing legislative history of § 1581 and concluding that it "was enacted to permit inspections and searches at the border").

ment that the search of his trunk was not "routine," nor could he under the principles of *Molina–Tarazon. See id.* at 712–18. Therefore, if the search was conducted at the border, it is clear that the search was proper even absent "any suspicion whatsoever." *Id.* at 712.

Sutter argues that the border search exception does not apply because, having proceeded past the primary inspection area to the secondary inspection area, he had technically entered the United States. Therefore, he argues, the search was governed by 19 U.S.C. § 482 and reasonable cause was required.[3]

Sutter's argument entirely lacks merit. "Some searches, though not *at* the border, occur so spatially and temporally close to it that they are considered border searches." *United States v. Ogbuehi,* 18 F.3d 807, 813 (9th Cir.1994). *Ogbuehi* squarely controls the instant case. In *Ogbuehi,* an individual named Teague walked through the Tijuana port of entry, passing through the pedestrian inspection area without incident. *See id.* at 809. He waited outside the Customs Building for other members of his group to pass through inspection (the group had determined to enter the United States separately, to minimize suspicion). *See id.* at 809–10. Customs agents became suspicious of Teague, however, after questioning an individual named Ogbuehi and ascertaining that Ogbuehi and Teague, along with two others, had traveled together by bus to Tijuana. *See id.* A customs agent asked Teague to return to the Customs Building for further questioning, where a canine search revealed that Teague was transporting heroin. *See id.*

Teague argued that the search was invalid because the canine search was not a border search, as it occurred after he had already passed through Customs Inspection. *See id.* at 812. We flatly rejected this contention: "Without defining the outer limits of these searches, we have no trouble concluding that Teague's search, occurring minutes after he crossed the border and 60 feet from the Customs Office door, was a border search requiring no suspicion." *Id.* at 813.

That holding controls the instant case. The search of Sutter's trunk took place at a secondary inspection area and was therefore both temporally and geographically close enough to the border to be considered a border search. Indeed, Sutter's argument is even less compelling than the argument rejected in *Ogbuehi.* In *Ogbuehi,* Teague had already cleared customs and therefore had technically "arrived" in the United States. Here, Sutter's referral to secondary inspection area was part of, not subsequent to, his initial entry into the United States.

Nothing in *United States v. Taghizadeh,* 41 F.3d 1263 (9th Cir.1994), relied on by Sutter, contradicts this conclusion. *Taghizadeh* held that searches of international packages are governed by 19 U.S.C. § 1582 and not by 19 U.S.C. § 482. *See id.* at 1265. Sutter relies on a passage which states "19 U.S.C. § 482 . . . thus

---

3. Section 482(a) provides, in pertinent part:
 Any of the officers or persons authorized to board or search vessels may stop, search, and examine, as well without as within their respective districts, any vehicle, beast, or person, on which or whom he or they shall suspect there is merchandise which is subject to duty, or shall have been introduced into the United States in any manner contrary to law, whether by the person in possession or charge, or by, in, or upon such vehicle or beast, or otherwise, and to search any trunk or envelope, wherever found, in which he may have a reasonable cause to suspect there is merchandise which was imported contrary to law.
 (The text quoted reflects technical amendments adopted in 2002, none of which affect Sutter's argument).

applies not to searches of arriving baggage or mail, but rather to baggage or mail or other items which have already 'arrived'" *Id.* at 1266. Sutter latches on to the arriving/arrived distinction to argue that, because his car was physically present in the United States, it had already "arrived," so the customs agent's authority to search it was governed by § 482, not § 1582. *Taghizadeh* had no occasion to expound on the distinction between "arrived" and "arriving," however, and Sutter's hyper-technical argument relating to that distinction is foreclosed by *Ogbuehi.*

Because the search of Sutter's trunk was, under the border search doctrine, proper even absent reasonable suspicion, no evidentiary hearing on that issue was required. The district court properly denied Sutter's motion without a hearing.

## B. The Speedy Trial Act

Under the Speedy Trial Act, Sutter had a right to a trial within seventy days of his arraignment. *See* 18 U.S.C. § 3161(c)(1).[4] The government's failure to comply results in a dismissal of the indictment, although the district court must then decide whether to dismiss with or without prejudice. *See* § 3162(a)(2); *see also United States v. Hardeman,* 249 F.3d 826, 828–29 (9th Cir. 2001).

■ In calculating the time elapsed, certain types of delay do not count against the seventy-day time limit. *See* § 3161(h). The only type of excludable delay at issue in this case is delay resulting from pretrial motions. *See* § 3161(h)(1)(F) (excluding "delay resulting from any pretrial mo-

tion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion"). Exclusion of pre-trial motion delay is automatic. The district court need not make any findings explaining the need for the delay, nor does the delay need to be "reasonably necessary" to be excluded. *United States v. Aviles–Alvarez,* 868 F.2d 1108, 1112 (9th Cir.1989).

The parties agree that 34 days of nonexcludable time elapsed between Sutter's indictment on September 18, 2001 and October 22, 2001, when Sutter filed several motions. According to the government, the calculations end there: The entire period between October 22, 2001 and February 24, 2002 is excludable under § 3161(h)(1)(F), the government argues, because Sutter's motion to compel discovery was pending during that entire period.

Sutter contends, in contrast, that the discovery motion was completely resolved at the November 13, 2001 hearing. In the alternative, Sutter contends that the discovery motion, even if not completely resolved at the November 13 hearing, was at least "under advisement" pursuant to § 3161(h)(1)(J).[5] Under that logic, a maximum of thirty additional excludable days could be attributed to the motion under § 3161(h)(1)(J).

Thus, according to Sutter's calculations, the Speedy Trial clock was either (1) tolled only for the period between October 22, 2001, and December 6, 2001, the date on which Sutter's suppression motion was withdrawn; or (2) tolled only for the peri-

---

**4.** All further statutory references are to 18 U.S.C. unless otherwise indicated.

**5.** Section 3161(h)(1)(J) provides:

The following periods of delay shall be excluded in computing the time within which an information or an indictment must be filed, or in computing the time within

which the trial of any such offense must commence:

... Any period of delay resulting from other proceedings concerning the defendant, including ... delay reasonably attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement by the court.

od between October 22, 2001 and December 13, 2001, the date 30 days after the discovery motion was taken "under advisement" pursuant to § 3161(H)(1)(J). By Sutter's accounting, therefore, at least 60 days of non-excludable delay elapsed between the operative date in December, and February 12, 2002, when Sutter filed his motion to dismiss. Adding those days to the 34 non-excludable days which elapsed before October 22, 2001, Sutter concludes that the Speedy Trial Act was violated.

### 1. The docket entry and the November 13 Hearing

Whether the Speedy Trial Act was violated turns on whether the motion to compel discovery was (1) completely resolved during the November 13, 2001 motions hearing, (2) taken "under advisement" under § 3161(H)(1)(J), or (3) continued, as the government contends.

The district court docket indicates that the discovery motion was not completely resolved, but rather was "grant[ed] in part/continued in part." Our review of the record, however, indicates that after the November 13 hearing there was nothing left for the district court to decide.

 At the November 13, 2001 hearing, the district court, after first settling some disputed matters, asked whether there were any additional discovery issues that needed to be addressed: [6]

The Court: Anything else on the discovery motion?

Mr. Viselman: No, your honor.

Ms. Tsui: I believe we have only one outstanding DEA–7. We just haven't received that yet, your honor.

The Court: One outstanding what?

Ms. Tsui: DEA–7, which is basically the analysis from the chemist that it was in fact marijuana. We haven't received that as of yet.

The Court: I assume you'll share that with the defendant when you get it?

Ms. Tsui: Yes, your honor.

The Court: Okay. To the extent stated, the motion for discovery is granted. So it is granted in part, I guess. And hopefully, the other issues raised in the motion will be resolved by agreement of counsel—between counsel.

Thus, although the district court docket officially continued the motion to compel discovery, the above colloquy indicates that there were no ongoing disputes on which the district court needed to rule. True, the parties continued to provide ongoing discovery, but ongoing discovery alone, in the absence of a pending *dispute* on which the court needs to rule, does not toll the Speedy Trial Act clock. *See Hardeman*, 249 F.3d at 828; *United States v. Mentz*, 840 F.2d 315, 327–28 (6th Cir. 1988).

The government does identify one discovery issue that arose after the November 13 colloquy: After January 14, 2002, a change in circumstances regarding a possible cooperating witness imposed a duty on the Government to disclose material previously requested by defense counsel. Notably, however, the government does not suggest that it disputed its duty to provide this information such that a court ruling would have been necessary.

Moreover, it is disingenuous for the government to assert that this particular "live issue" traces back to the November 13, 2001 hearing. As of that date, although Sutter had requested all information relating to cooperating witnesses, the government had responded that it did not anticipate calling any cooperating persons. Therefore, at the close of the November 13, 2001, there was no conceivable ruling that the district court could have made on

---

**6.** Mr. Viselman represented Sutter, Ms. Tsui the government.

this issue. As of that date, there was no live dispute.

### 2. The Remaining Pro Forma Discovery Motion

The question remains whether the discovery motion, because officially "continued" on the district court docket, tolls the Speedy Trial Act clock even though there remained nothing for the district court to decide unless and until future discovery disputes arose.

The unique nature of discovery motions makes application of the Speedy Trial Act difficult. Discovery in criminal cases can, and often does, proceed informally under Fed.R.Crim.P. 16 without district court intervention. *See Mentz*, 840 F.2d at 328. Because discovery so often proceeds informally, even when a formal discovery motion is filed the district court may choose not to intervene unless and until a "snag develops." *Id.* In other words, a criminal discovery motion is often no more than an empty box, into which later-arising disputes can be placed. Such motions raise the possibility—a reality in this case according to the government, even though the disputed issues were resolved at the November 13 hearing—that the motion will indefinitely toll the Speedy Trial Act clock, thereby rendering nugatory its protections.

We have twice addressed the application of the Speedy Trial Act to discovery motions, but neither case resolves the instant question. In *Aviles–Alvarez*, the defendant made a motion for discovery of a chemist report and of his criminal record on September 4, 1987. *See* 868 F.2d at 1111. At a pre-trial hearing, the district court stated in response to this request, "[u]ntil those matters are either produced or disclaimed by the government, we'll continue the motion on discovery." *Id.* The government produced the disputed chemist report in mid-September, but as of October 6, 1987, had not produced the requested criminal record. *See id.* Nor had the defendant withdrawn or disclaimed the motion. *See id.* We concluded that the entire period until October 6, 1987 was excludable delay because of the pending discovery motion. *See id.* at 1113.

A subsequent case, *Hardeman*, presented a factually different situation. In *Hardeman*, the district court held a status conference on various discovery disputes. *See* 249 F.3d at 828. In response to a status memorandum, the district court resolved several discovery disputes between the parties and ordered the parties to attempt to resolve the outstanding issues. *See id.* After conferring, the parties reported that they had resolved all but one issue and that the final conflict "may be a nonissue." *Id.* Subsequently, in response to Hardeman's Speedy Trial Act motion, the government contended that discovery issues which remained live after the status conference were pending motions, thereby tolling the Speedy Trial Act clock under § 3161(h)(1)(F). *See id.* We disagreed. We assumed without deciding that the discovery issues mentioned in the status memorandum could be treated as motions. *See id.* Nonetheless, we noted both that "there remained nothing for the district court to decide" and that there was no "identifiable pending motion apparent from a review of the district court docket." *Id.* Therefore, we held, the Speedy Trial Act clock still ticked. *Id.* at 828–29.

As is apparent, *Hardeman* differed from *Aviles–Alvarez* in two respects: First, in *Hardeman*, there was no identifiable pending motion on the district court docket, whereas in *Aviles–Alvarez* the district court expressly continued the motion. Second, in *Hardeman* there were no continuing live disputes, whereas in *Aviles–Alvarez* the discovery dispute was live because

the government still had not turned over the disputed material.

This case splits the difference: There were no live discovery disputes traceable to Sutter's October 22, 2001 motion after the November 13, 2001 hearing, but there was an identifiable pending motion on the district court docket. So the question is whether a discovery motion "continued" on the district court docket—indefinitely—in the absence of a live dispute tolls the Speedy Trial Act clock.

To answer this question, we look to the principles stated in *Henderson v. United States*, 476 U.S. 321, 106 S.Ct. 1871, 90 L.Ed.2d 299 (1986). That case interpreted two related provisions of the Speedy Trial Act: (1) § 3161(h)(1)(F), which excludes from the Speedy Trial Act calculation "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion"; and (2) § 3161(h)(1)(J), which excludes "delay reasonably attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement by the court."

First, the Court rejected the argument that the "prompt resolution" language in § 3161(h)(1)(F) suggested that only reasonably necessary pre-hearing delay should be excluded. Rather, the Court held:

> Subsection (F), written in the disjunctive, excludes time in two situations. The first arises when a pretrial motion requires a hearing: subsection (F) on its face excludes the entire period between the filing of the motion and the conclusion of the hearing. The second situation concerns motions that require no hearing and that result in a "prompt disposition." There, the promptness requirement was "intended to provide a point at which time will cease to be excluded, where motions are decided on the papers filed without hearing." S.Rep. No. 96–212, at 34. The "point at which time will cease to be excluded" is identified by subsection (J), which permits an exclusion of 30 days from the time a motion is actually "under advisement" by the court. Without the promptness requirement in subsection (F), a court could exclude time beyond subsection (J)'s 30-day "under advisement" provision simply by designating the additional period as time "from the filing of the motion" through its "disposition" under subsection (F).

*Id.* at 329, 106 S.Ct. 1871.

Having parsed subsection (F) into two pieces, one addressing motions which require a hearing and the other addressing motions which are to be resolved with no hearing, the Court went on to consider the crossover situation in which the court *both:* (1) held a hearing and (2) subsequently took the issue under advisement and/or requested additional briefing. In such situations, the Court held that three distinct categories of time are excludable: (1) the time from the filing of the motion to the hearing (whether or not such time was reasonably necessary); (2) additional time required to receive supplemental briefing or additional factual materials; and (3) an additional 30 days during which the matter is "under advisement." *Id.* at 332, 106 S.Ct. 1871.

As summarized by the Sixth Circuit: "Once the hearing is concluded, and the district court has received all the submissions," then " § 3161(h)(1)(J) comes into play" and "excludes a maximum of 30 days from the day the motion is 'actually under advisement.'" *Mentz*, 840 F.2d at 326; *see also United States v. Aviles*, 170 F.3d 863, 869 (9th Cir.1999), *as amended by* 216 F.3d 881 (9th Cir.2000) (limiting to 30 days the amount of time excludable once the district court holds a hearing on a pretrial

motion and takes the motion under advisement); *accord United States v. Davenport,* 935 F.2d 1223, 1228 (11th Cir.1991).

■ Continuing indefinitely a *pro forma* discovery motion violates the principles of *Henderson. Henderson* indicates that motions that do not result in a hearing do not toll the Speedy Trial clock unless resolved within 30 days from the time the motion is taken under advisement. *See Henderson,* 476 U.S. at 329, 106 S.Ct. 1871 (" 'if motions are so simple or routine that they do not require a hearing, necessary advisement time should be considerably less than 30 days.' ") (quoting S.Rep. No. 96–212). An indefinite "continuance" of a motion for which no hearing is scheduled is tantamount to an indefinite advisement period.

Perhaps so recognizing, the Sixth Circuit has, in the case of discovery motions, looked beyond the docket entries to the particular facts of the proceedings below to determine the extent to which a discovery motion tolls the Speedy Trial Act clock. In *Mentz,* the court held that where a defendant files a *pro forma* discovery motion never ruled upon nor otherwise acted upon by the district court, that discovery motion does not toll the Speedy Trial Act clock at all, despite its formal appearance on the docket. *See* 840 F.2d at 329; *compare United States v. Chalkias,* 971 F.2d 1206, 1210–11 (6th Cir.1992) (where the government responded to discovery motion and the district court ruled, the delay was properly excluded in the Speedy Trial Act time calculation).

A similar—but not identical—approach has been used by the Fifth Circuit. In *United States v. Franklin,* 148 F.3d 451, 455 (5th Cir.1998), that Circuit held that if the government responds to a discovery motion and there is no indication that the district court took further action, the appellate court will assume that the motion's "prompt disposition" occurred at the time of the government's response.

Any individualized post hoc inquiry into the nature of the discovery dispute is, however, in considerable tension with *United States v. Morales,* 875 F.2d 775, 777 (9th Cir.1989). *Morales* held that the extent to which a pretrial motion tolls the Speedy Trial Act clock in no way depends on the necessity or merits of the motion. *See id.* In some instances, a discovery motion will initially occupy the district court's attention and yet later be resolved among the parties. Determining excludability based on a post-hoc evaluation of whether the motion was *pro forma* or whether it was serious enough to warrant the district court's attention (at least for some period of time) requires exactly the kind of individualized inquiry rejected in *Morales.*

While an inquiry into the merits of, or necessity for, a discovery motion is foreclosed by *Morales,* recognizing a motion as pending indefinitely although no hearing is even scheduled is in tension with *Henderson.* A sensible middle ground is supplied by the Fifth Circuit opinion in *United States v. Johnson,* 29 F.3d 940, 944 (5th Cir.1994), which considered *Henderson's* application to pre-trial motions outside the discovery context and adopted the following rule: "Because ... it is not always clear from the appellate record when or if a court took a matter under advisement, absent evidence to the contrary, we hold, as a matter of law, that a motion should be considered under advisement for Speedy Trial Act purposes on the day the last paper concerning the motion at issue was filed with the court."

■ We adopt a variant of that rule: A discovery motion will be deemed under advisement as of the date of the last hearing or filing of supporting papers, whichever is later, absent evidence that the motion was actually taken under advisement later than that (as, for example, where the court suspends consideration of the motion for a

definite period so as to allow the parties to discuss settlement). Under this rule, a *pro forma* discovery motion "continued" merely "in case" future discovery disputes arise is under advisement, because the motion is not set for a hearing nor is the court awaiting any ascertainable materials. Put another way, unless consideration of the motion is continued until a date certain or the happening of an event certain, the motion is deemed under advisement.

This bright-line rule accommodates the competing concerns explicated in both *Morales* and *Henderson*. It does not require a post-hoc inquiry into the merits of the motion or lack thereof, and yet it approximates the desired result of such a post-hoc inquiry: When a discovery motion treats a live dispute, necessitating a hearing or other filing, the discovery motion will not be "under advisement" until after those events occur, thereby tolling the Speedy Trial Act clock until 30 days after it is so under advisement.

The rule we adopt is also consistent with our decision in *Aviles–Alvarez*. True, *Aviles–Alvarez* excluded well over 30 days of post-hearing delay due to the discovery motion, without expressly considering the possibility that the 30–day maximum "under advisement" limitation discussed in *Henderson* precluded that result.[7] In *Aviles–Alvarez*, however, the district court had not yet taken the discovery motion under advisement, because it was waiting for specific and ascertainable subsequent events to unfold before it could rule—that is, it was not yet "in a position to dispose of the motion." *Henderson*, 476 U.S. at 331, 106 S.Ct. 1871. Unlike a true "empty box" discovery motion which could pend indefinitely, the district court in *Aviles–Alvarez* continued the motion only in the face of an actual discovery dispute, and

only until the happening of an event certain: namely, the government's production or disclaimer of the disputed item. *See Aviles–Alvarez*, 868 F.2d at 1111.

### 3. Application to Sutter's Speedy Trial Act claim

■ Applying the rule articulated above to Sutter's case, it is clear that, as matters stood after the November 13 hearing, the discovery motion was under advisement. After that hearing, there were no further discovery disputes. The docket indicates that the motion was "continued," but the "continuance" was of an indefinite nature. The district court did not on November 13, 2001, schedule any future hearings, request any additional filings, or indicate, as in *Aviles–Alvarez*, an event certain which would dispose of the motion. Because considering an indefinite continuance as delaying the under advisement period violates the reasoning of *Henderson*, had matters stood still after November 13, the motion would have been deemed under advisement under the rule we have articulated.

The December 6, 2001, hearing, however, changed matters. Judge Rothstein then indicated that the motion was continued only until an event certain—the motions *in limine* hearing. The colloquy was as follows:

> Ms. Tsui: Your honor, my advice would be at least the suppression portion, if it does go to trial there will be a need to determine whether or not the statements were voluntarily [sic] and to have that portion continued on.
>
> The Court: I thought he was withdrawing that?

---

7. The opinion did, however, cite *Henderson* for a different proposition. *See Aviles–Alva-* *rez*, 868 F.2d at 1112.

Mr. Vis.: Well, your honor, I guess for the purposes of Speedy Trial Act, we want to maintain that motion.

The Court: Don't you have some discovery motions pending that will get you where you want to go?

Ms. Tsui: We do have discovery motions pending your honor.

The Court: So you don't need that motion [to suppress] pending? That motion can be withdrawn so you at least know where you stand in terms of a trial date. *You can always rule on discovery motions at the motion in limine hearing, right?* I think you should know what motions you have pending that really need to be addressed.

. . .

The Court: Okay. He's withdrawing [the] motion [to suppress]. So the motions we now have pending I believe, are the motion to compel.

Ms. Tsui: Yes, your honor.

The Court: Right?

Ms. Tsui: Yes, your honor.

If Judge Rothstein's interpretation of the docket were correct, then the discovery motion would have been pending for a future hearing. So the record indicates the contrary evidence (here, a future hearing) which rebuts the presumption that a discovery motion is "under advisement." The Speedy Trial Act clock was properly tolled.

Judge Rothstein was incorrect, of course, in concluding that a future hearing was necessary. But we do not ordinarily second-guess a district court's conclusion that a hearing is needed. *See Henderson,* 476 U.S. at 329–30, 106 S.Ct. 1871 (time between filing of motion and conclusion of hearing is automatically excludable without regard to whether the delay is reasonably necessary).

Moreover, Sutter acquiesced in (if not invited) Judge Rothstein's mistake. While we recognize that a defendant cannot *waive* speedy trial rights, as the right to a speedy trial "belongs not only to the defendant, but to society as well," *United States v. Ramirez–Cortez,* 213 F.3d 1149, 1156 (9th Cir.2000) (citation omitted), we have also held that where a defendant stipulates to facts underlying a district court's conclusion that time is excludable, the defendant cannot later challenge that finding. *United States v. Shetty,* 130 F.3d 1324, 1328 (9th Cir.1997). Here, Sutter's attorney represented that there needed to be a pending motion for Speedy Trial Act purposes and did not contest the representation that such a motion was indeed pending and required a hearing.

We do not find that Sutter *waived* his Speedy Trial Act rights. Rather, we simply refuse to set aside Judge Rothstein's determination that a hearing was necessary where Sutter helped create the very record ambiguity—regarding whether there was indeed a discovery motion set to be heard with the *in limine* motions—he now asks us to resolve in his favor. His Speedy Trial Act motion must fail.

### III. CONCLUSION

For the reasons stated, we **AFFIRM.**