# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-1269

_____

United States of America,         *

                           *

         Plaintiff - Appellee,    *

                           * Appeal from the United States

    v.                        * District Court for the

                           * District of Minnesota.

John Jacob Williams,        *

                           *

         Defendant - Appellant.   *

_____

Submitted: November 11, 2008
Filed:  February 20, 2009

_____

Before MURPHY, RILEY, and GRUENDER, Circuit Judges.

_____

MURPHY, Circuit Judge.

John Jacob Williams was convicted by a jury of conspiracy to distribute cocaine and crack, possession with intent to distribute cocaine and crack, and possession of a firearm in furtherance of a drug trafficking crime.  He was then sentenced to 300 months by the district court.[1]  Williams appeals, asserting violations of the Speedy Trial Act and the Sixth Amendment.  We affirm.

_____

[1]The Honorable Richard H. Kyle, United States District Judge for the District of Minnesota.

I.

On March 8, 2006, a cooperating individual placed a recorded call to Williams and offered to purchase cocaine and cocaine base. While law enforcement listened, Williams and the confidential informant discussed the details of the transaction and where they would meet. A short time later Williams and several women arrived at the predetermined location where their car was stopped by the police. Officers ordered Williams and his companions from the vehicle at gunpoint. Before Williams got out of the car, one of the officers noticed a handgun inside it. Williams accepted responsibility for it, saying "[i]t's mine, not the girls." After Williams was removed from the vehicle, he told the police that he also had dope in his pocket. He was then placed under arrest and searched; cocaine and crack were recovered from his pockets. During a subsequent search of Williams' home, the police recovered two kilograms of powder cocaine, a large sum of cash, and ammunition.

After being advised of his <u>Miranda</u> rights, Williams confessed to trafficking in large amounts of cocaine and to possessing a weapon in support of the operation. He also indicated he wanted to cooperate and subsequently placed a phone call to an associate, Michael Broadway, who was wanted on a homicide charge in Illinois. Broadway was apprehended as a result of this phone call. Williams informed the officers that he wanted to continue to help and urged them to "[p]ut [him] on a plane. . . . to Chicago right now." Two detectives and a prosecutor from Chicago interviewed Williams about Broadway on March 19, 2006 at the Sherburne County jail. In the presence of his attorney at the time, Robert Paule, Williams provided a voluntary statement. Following this interview, the prosecution and Paule agreed to allow Williams to travel to Chicago to testify before the state grand jury which was investigating Broadway.

After consultation with the defense, the prosecution filed a motion on March 29, 2006 to enlarge the time to indict. The motion was granted, and Williams was indicted by a federal grand jury on May 9, 2006 on one count of possession with intent to distribute in excess of 50 grams of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A). Williams pled not guilty at his arraignment on May 17, 2006.

Williams was transported to the Metropolitan Correctional Center Chicago (MCCC) on June 7, 2006. Because Williams expressed concern that he might be recognized as a cooperating witness, defense counsel, the state prosecutors, and the Drug Enforcement Administration attempted to limit the time Williams spent in Chicago. Shortly before Williams' scheduled grand jury appearance, however, his unit at MCCC was placed on extended quarantine due to an outbreak of measles. The quarantine was not lifted until July 7, 2006, and on July 14 Williams filed a pro se motion under the Speedy Trial Act of 1974, 18 U.S.C. §§ 3161-74 (STA), seeking dismissal of the complaint for failure timely to indict. Williams nevertheless continued to cooperate with authorities in Chicago, and he testified before the state grand jury on August 29, 2006.

Although Williams' cooperation was complete by the end of August, he remained at MCCC until November 1, 2006. During this time he filed two more pro se motions. On September 13 he filed "Defendant's Brief on Title 18 United States Code," challenging the legality of Title 18. The second, dated September 22, 2006, entitled "Affidavit of Truth by John Jacob Williams," realleged a violation of the STA. Within the affidavit Williams also expressed dissatisfaction with Paule and his wish that his July 14, 2006 motion not be "changed in any way unless that changed [sic] is approved and signed by the defendant." Shortly thereafter, Williams fired Paule and sought appointed counsel. Williams was

returned to Minnesota on November 11, 2006, and on November 28 John Hughes was appointed to represent him.

Plea negotiations between the defense and the prosecution were unsuccessful, and Williams was charged in a three count superseding indictment on January 9, 2007 with possession with intent to distribute cocaine and crack, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A), conspiracy to distribute cocaine and crack, in violation of 21 U.S.C. § 846, and possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1). Shortly thereafter Williams scheduled a hearing in front of Judge Kyle for the purpose of waiving his speedy trial rights; Judge Kyle indicated that he would want a personal waiver on the record. Williams decided against the waiver just prior to the commencement of the hearing which was then cancelled.

Appointed counsel filed a series of pretrial motions for Williams on January 30, 31 and February 1, 2007, including a motion to dismiss under the STA for failure timely to indict. At a hearing on February 15 the government advised the magistrate judge that it would conduct additional research before addressing the STA motion. The magistrate judge requested briefs from both parties on the issues but the defense did not provide any further briefing, and the magistrate judge denied the motion as abandoned without addressing its substance. Defense counsel filed a general objection to the report and recommendation (R & R) but did not address any speedy trial issue. On April 9, 2007, the district court adopted the R & R and issued an order denying the STA motion.

Williams' counsel filed another motion to dismiss under the STA for failure timely to indict on April 13, 2007. The defense amended this motion on April 26 to allege an additional statutory violation for failure to bring the defendant to trial within 70 days and a constitutional claim under the Sixth Amendment. The STA

and Sixth Amendment motions were heard before a magistrate judge on May 1, 2007.

The magistrate judge issued a R & R denying the STA motions on June 4, 2007, after concluding that the indictment period had been extended pursuant to § 3161(h)(2) and that the statutory 70 day period to bring Williams to trial had not yet expired. The magistrate judge did not reference Williams' Sixth Amendment speedy trial argument, and the defense did not object to this omission in its objections to the R & R.

According to the magistrate judge's calculations, the 70 day period began to run on May 10, 2006, the day following the indictment, and continued until Williams filed pretrial motions on May 31, 2006. At that point there remained 49 days to bring Williams to trial. The period from May 31 until June 6, 2006, when Williams withdrew his pretrial motions, was excludable under § 3161(h)(1)(F).[2] On June 7 the days began to count again until July 14, 2006, when Williams filed a pro se motion to dismiss for STA violation, leaving 12 days to bring him to trial. That motion was pending until it was withdrawn by defense counsel on March 7, 2007, and the magistrate judge excluded the entire period under § 3161(h)(1)(F).

On March 8, 2007, a R & R was issued dealing with STA issues and other motions filed by Williams at the end of January and the beginning of February 2007. The magistrate judge calculated that March 8 began a new excludable period under § 3161(h)(1)(F) which extended until April 9, 2007, when the district court adopted the R & R (that was within the 30 day period provided by § 3161(h)(1)(J)). The speedy trial clock began to run again on April 10, 2007, until

---

[2]For clarity, all references to 18 U.S.C. §§ 3161(h)(1)(F) and 3161(h)(1)(J) are to the 2007 statute. The subsections are currently codified in identical form at 18 U.S.C. §§ 3161(h)(1)(D) and 3161(h)(1)(H).

stopped by Williams' April 13 motion to dismiss for STA violation, leaving 9 days to bring him to trial. At a hearing on May 1 the parties were asked to submit additional briefing which they did on May 4, 2007. The time from April 13 to May 4, 2007 was thus excludable under § 3161(h)(1)(F). On May 5, 2007 the 30 day period under § 3161(h)(1)(J) for consideration of a motion was triggered, making the time from May 5 through June 3, 2007 excludable. The speedy trial calculations by the magistrate judge ended at this point, but the issuance of his R & R on June 4, 2007 began an excludable period running until the district court adopted it on July 2, 2007. At that point, 9 days still remained for a speedy trial to begin.

Williams' trial began on July 9, 2007. That was within the 70 day statutory period according to the district court. At the conclusion of the evidence he was convicted by a jury of all counts and sentenced to 300 months. Williams argues on appeal that the district court erred in finding that his Sixth Amendment right to a speedy trial was not violated. He also argues that the district court erred in excluding from the statutory speedy trial calculations the entire period during which his pro se motions were pending.

We review the district court's findings of fact for clear error but review its legal conclusions de novo. United States v. Aldaco, 477 F.3d 1008, 1016 (8th Cir. 2007). "Sixth Amendment and Speedy Trial Act challenges for delay are reviewed independently of one another." United States v. Sprouts, 282 F.3d 1037, 1041 (8th Cir. 2002).

II.

The initial question is whether Williams' failure to object to the magistrate judge's decision to ignore his Sixth Amendment claim precludes our review of the

issue. In this circuit the right to appeal is not lost when a party fails to file objections to a R & R if the issues involved are issues of law or mixed issues of law and fact, or "when neither the local district court rule nor the magistrate's notice has clearly informed the plaintiff that failure to object to the magistrate's report will result in waiver of that right to appeal." Nash v. Black, 781 F.2d 665, 667 (8th Cir. 1986).

The magistrate judge's notice states in relevant part, "[A]ny party may object to this Report and Recommendation by filing . . . written objections which specifically identify the portions of the proposed findings or recommendations to which objection is being made . . . ." District of Minnesota Local Rule 72.2(b) is identical in substance to Federal Rule of Civil Procedure 72(b). Since neither the R & R nor the local rule provided notice to Williams that failure to object to a portion of the report would bar appeal of that issue and the issues presented are of mixed law and fact, this matter is properly before us.

The Sixth Amendment right to a speedy trial "attaches at the time of arrest or indictment, whichever comes first, and continues until the trial commences." United States v. Shepard, 462 F.3d 847, 864 (8th Cir. 2006) (quoting United States v. Perez-Perez, 337 F.3d 990, 995 (8th Cir. 2003)). When evaluating a Sixth Amendment claim for pretrial delay, we perform a four factor balancing test, considering: "[l]ength of delay, the reason for the delay, the defendant's assertion of his [speedy trial] right, and prejudice to the defendant." Barker v. Wingo, 407 U.S. 514, 530 (1972). In performing this test "the conduct of both the prosecution and the defendant are weighed." Id.

We consider the length of delay first because it is "a triggering mechanism." Id. Here, Williams complains of a sixteen month delay which is presumptively prejudicial. See, e.g., Doggett v. United States, 505 U.S. 647, 652 n.1 (1992) (generally delay becomes presumptively prejudicial "as it approaches one year.");

Shepard, 462 F.3d at 864 (17 month delay presumptively prejudicial). We must therefore consider the remaining Barker factors. Id.

With regard to the reason for delay, "[a] deliberate attempt to delay the trial . . . should be weighted heavily against the government. A more neutral reason such as negligence . . . should be weighted less heavily but nevertheless should be considered . . . ." Barker, 407 U.S. at 531. Williams voluntarily traveled to Chicago for the express purpose of cooperating with the government so that he might reduce the length of his sentence. "Delays which have been caused by the accused himself can not, of course, be complained of by him." Shepherd v. United States, 163 F.2d 974, 976 (8th Cir. 1947). Not all of the period Williams was in Chicago was his own responsibility, however. Despite the fact that his cooperation in Chicago was complete on August 29, 2006, the day he testified before the state grand jury, Williams remained at MCCC until November 1, 2006 awaiting transportation to Minnesota by the federal authorities. Thus, the period between August 29 and November 1, 2006 cannot be attributed to Williams.

Williams does not argue that the government intentionally delayed prosecution, but instead claims that its negligence is to blame. Although the United States asserts that it made "repeated" phone calls in an effort to have Williams returned to Minnesota sooner, it concedes that it "should have done a better job." While any negligence is not weighted as heavily against the prosecution as deliberately dilatory tactics, it would nonetheless fall "on the wrong side of the divide between acceptable and unacceptable reasons for delaying a criminal prosecution once it has begun." Doggett, 505 U.S. at 657.

Williams' "assertion of his speedy trial right . . . is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right." Barker, 407 U.S. at 531-32. He filed motions to dismiss for speedy trial

-8-

violations on July 14, 2006 and on January 31, April 13, and April 26, 2007.  Both the district court and the prosecution were then placed on notice that Williams was asserting the right.

Prejudice, the fourth <u>Barker</u> prong, "should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect. . . . (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired."  <u>Barker</u>, 407 U.S. at 532.  The last interest is "the most serious . . . because the inability of a defendant adequately to prepare his case skews the fairness of the entire system."  <u>Id.</u>

Williams spent over four hundred days in jail awaiting trial.  During a substantial portion of this time he was concerned that he would be recognized as a cooperating witness, thus placing his family and himself at risk.  Oppression, "[a]nxiety[,] and concern of the accused are undoubtedly present to some degree in every case.  However, that alone does not establish prejudice where . . . the defendant neither asserts nor shows that the delay weighed particularly heavily on him in specific circumstances."  <u>Morris v. Wyrick</u>, 516 F.2d 1387, 1391 (8th Cir. 1975).  Here, Williams has failed to show that the delay was unusually burdensome or oppressive to him.

It does not appear the defense was impaired as a result of delay.  Williams argues that he lacked convenient access to his attorney during his incarceration in Chicago and that this resulted in a lost opportunity to locate the passengers who were in the car with him at the time of his arrest.  He has not, however, identified any testimony they could have offered that would have been helpful to his defense.  Assuming arguendo that one or more of the passengers would have claimed ownership of the firearm or the cocaine, it is unclear what effect this might have

had. At the time of his arrest Williams not only confessed to ownership of both the drugs and the firearm, but he specifically exonerated his passengers of any responsibility for either. In addition his efforts to locate the women were perfunctory at best, suggesting that they were not critical to his defense. Finally, the evidence of his guilt was sufficiently overwhelming to lead us to doubt that a failure to locate the passengers could have impacted the outcome.

The government should have returned Williams to Minnesota as expeditiously as possible once his cooperation in Chicago was complete, particularly given his assertion of his speedy trial rights during this period. Nevertheless, the delay was not so great that we are able to discount his inability to show particularized prejudice from that delay. Negligence by the government requires toleration by the courts that "varies inversely with its protractedness . . . and its consequent threat to the fairness of the accused's trial." Doggett, 505 U.S. at 657 (internal citation omitted) (six year delay sufficient to establish speedy trial violation absent particularized prejudice). Here, because the delay was not of such length to eliminate the need to show particularized prejudice and because there is no evidence that the delay impeded Williams' defense or threatened to deprive him of a fair trial, we conclude that there was no Sixth Amendment violation.

III.

The STA, 18 U.S.C. §§ 3161-74, is "designed to protect a criminal defendant's constitutional right to a speedy trial and to serve the public interest in bringing prompt criminal proceedings . . . ." United States v. Stephens, 489 F.3d 647, 652 (5th Cir. 2007). Under the Act a defendant must be brought to trial within 70 days of his indictment or arraignment, whichever is later. United States v. DeGarmo, 450 F.3d 360, 362 (8th Cir. 2006). That 70 day period can be interrupted because certain periods of delay are excluded by the Act from the

running of the clock.  Id.  The clock is stopped by "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion," **§ 3161(h)(1)(F)** (emphasis supplied), and by "delay reasonably attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement by the court," **§ 3161(h)(1)(J)** (emphasis supplied).

A defendant has the burden of proof to show that his statutory right to a speedy trial has been violated.  United States v. Cordova, 157 F.3d 587, 599 (8th Cir. 1998).  To meet that burden the defendant must demonstrate that more than 70 non excludable days have passed from the date the clock began to run. § 3161(c)(1).  "When a violation of the time limits of the Act is shown to have occurred, dismissal is mandatory on motion of the defendant."  United States v. Koory, 20 F.3d 844, 846 (8th Cir. 1994).

Williams argues that the district court erred by excluding the entire period during which his July 14, September 13, and September 22 pro se motions were pending.  In other words he contends the court erred by excluding the entire time between July 14, 2006 and March 7, 2007, the day that Williams' appointed counsel withdrew his July 14 and September 13 filings.  Although counsel did not withdraw the September 22 filing, we need not consider whether it would have further tolled the clock since the July 14 motion had that effect until it was withdrawn.

Williams first asserts that pro se motions filed by a represented party do not toll the speedy trial clock.  Williams then argues that if pro se motions filed by a represented party do toll the speedy trial clock, the district court erred by analyzing his claim under the "hearing" clause of § 3161(h)(1)(F) rather than its "prompt disposition" clause.  If a district court holds a hearing on a motion he argues

correctly, the "hearing" clause controls and the time between the filing and the hearing is thus excludable. If a district court does not hold a hearing on a motion he argues correctly, the "prompt disposition" clause is applicable, and under Henderson v. United States, 476 U.S. 321, 329 (1986), § 3161(h)(1)(J) starts the clock after 30 days if there has been no disposition of the nonhearing motion.

Williams contends that the district court ignored his pro se filings and that as a result the "prompt disposition" clause is implicated. Accordingly, he asserts that on July 14, 2006, when he filed a pro se motion to dismiss for STA violation, the clock stopped until 30 days later on August 12, 2006 when it began to run again. On September 13 and again on September 22, 2006, Williams filed two more pro se motions.[3] Since the filings overlap, the clock stopped from September 13 until October 22, 2006 he argues, 30 days after the second filing. These arguments by Williams are not persuasive.

Although Williams is correct that "[t]here is no constitutional or statutory right to simultaneously proceed pro se and with benefit of counsel," United States v. Agofsky, 20 F.3d 866, 872 (8th Cir. 1994), this circuit does not prohibit it. One reason such a prohibition would be unwise is because often, as here, a client wishes to raise issues that counsel does not. See, e.g., Williams Aff., ¶¶ 4-5 (asserting speedy trial right pro se because defense counsel allegedly refused to do so). While it is true that such motions are sometimes frivolous, it is also true that a party may sometimes look after his interests with more vigor and even effectiveness than his representative.

---

[3]Williams' Brief on Title 18 and Affidavit of Truth are properly considered motions for purposes of the STA. Cf. United States v. Arbelaez, 7 F.3d 344, 345 (3d Cir. 1993) (letter sent by counsel requesting continuance construed as motion for purposes of Act); United States v. Elkins, 795 F.2d 919, 922 (11th Cir. 1986) (telephone call to court by defense counsel construed as motion for purposes of Act).

Moreover, even were we to concede Williams' argument that "at least one of the filings made little sense," this would not impact our analysis. The statute is crystal clear: § 3161(h)(1)(F) excludes "delay resulting from <u>any</u> pretrial motion . . . ." (emphasis supplied). Nowhere does the statute distinguish between pro se motions and motions filed by counsel, or between meritorious and frivolous motions. The case law is in accord. See <u>Stephens</u>, 489 F.3d at 653 (pro se motion filed by represented defendant tolled speedy trial clock); <u>United States v. Springer</u>, 51 F.3d 861, 865 (9th Cir. 1995) ("frivolous" motion tolled speedy trial clock because Act "does not contain a requirement that the merits of a motion be assessed before a delay is permitted."). Thus, every motion filed by a defendant, whether or not it is frivolous and whether or not he is represented at the time of filing, tolls the speedy trial clock.

Resolution of the second issue raised by Williams requires consideration of the separate clauses in § 3161(h)(1)(F) as well as consideration of § 3161(h)(1)(J). See <u>United States v. Blankenship</u>, 67 F.3d 673, 676 (8th Cir. 1995) (noting that the sections "are intertwined, to an extent."). Subsection (F) "distinguishes between motions that require a hearing and those that do not." <u>United States v. Mentz</u>, 840 F.2d 315, 326 (6th Cir. 1988).

For motions that require a hearing, "subsection (F) excludes any period of delay caused by any pretrial motion, from the filing of the motion through the conclusion of the hearing. . . . whether that hearing was prompt or not." <u>Henderson</u>, 476 U.S. at 326 (internal quotation marks omitted). The "[e]xclusion of pre trial motion delay is automatic," <u>United States v. Sutter</u>, 340 F.3d 1022, 1027 (9th Cir. 2003) (internal quotation marks omitted), and the time during which a motion is pending is excludable even if the pendency of the motion is not the cause of the delay. <u>United States v. Vo</u>, 413 F.3d 1010, 1015 & n.2 (9th Cir. 2005). After the hearing is over, the district court might require supplemental

filings from the parties in order to properly resolve the motion.  <u>Mentz</u>, 840 F.2d at 329.  The time during which the district court is awaiting these filings is excluded.  <u>Id.</u>  Once the submissions have been received, "prompt disposition" of the motion is required in order to exclude time, and § 3161(h)(1)(J) excludes a maximum of 30 days from the point a motion is actually taken under advisement.  <u>Id.</u>  Thus, "[s]ection 3161(h)(1)(F) and section 3161(h)(1)(J) dovetail; the former ends when the latter begins."  <u>United States v. Mers</u>, 701 F.2d 1321, 1336 (11th Cir. 1983).

Subsection (F) also excludes time when motions do not require a hearing but nevertheless result in a "prompt disposition."  <u>Henderson</u>, 476 U.S. at 329.  "[T]he promptness requirement was intended to provide a point at which time will cease to be excluded . . . .  The point . . . is identified by subsection (J), which permits an exclusion of 30 days from the time a motion is actually under advisement . . . ."  <u>Id.</u> (internal citation and quotation marks omitted).  "A motion 'is actually under advisement' when 'the court receives all the papers it reasonably expects.'"  <u>Mentz</u>, 840 F.2d at 327 (quoting <u>Henderson</u>, 476 U.S. at 329).

Williams argues that his pro se motions did not result in a hearing and thus the "prompt disposition" clause of § 3161(h)(1)(F) is controlling.  Accordingly, he contends under § 3161(h)(1)(J) time ceased to be excludable 30 days after the motions were filed.  We disagree.  Whether or not a hearing is required to resolve a motion to dismiss for STA violation, it is beyond question that Williams was afforded a hearing in this case.  Thus, the "hearing" clause of § 3161(h)(1)(F) is controlling.  On July 14, 2006 Williams filed a pro se motion under the STA seeking dismissal of the complaint for failure timely to indict, and the February 15, 2007 hearing addressed an alleged STA violation for failure timely to indict.[4]

---

[4]We note that the May 1, 2007 hearing also addressed a purported STA violation for failure timely to indict although Williams' pro se motion had been withdrawn by that point.

Because Williams' STA argument was addressed at a hearing, we cannot conclude that any earlier date started the speedy trial clock to run merely because a docket entry did not include pro se STA issues as one subject covered in a particular hearing. To reach any other conclusion would elevate form over substance and disregard the purposes of the Act.

In summary, the "hearing" clause of § 3161(h)(1)(F) applies to exclude the time when Williams' pro se motions were pending from the running of the clock, and we conclude that the magistrate judge correctly calculated the periods of excludable delay. It goes without saying, however, that "a district court may not simply ignore a motion for a speedy trial and thereby render excludable all subsequent periods of delay." United States v. Hall, 181 F.3d 1057, 1061 n.1 (9th Cir. 1999). Nor may a district court neglect a motion and then attempt to insulate the case from dismissal under the Act by holding a belated hearing and thereafter declaring the time prior to the hearing excludable. We are not faced with a either situation here and conclude that the district court did not err by denying Williams' motion to dismiss under the STA.

IV.

Accordingly, we affirm the judgment of the district court.

_____