FILED
United States Court of Appeals
Tenth Circuit

**December 20, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

DEMARCO DEON WILLIAMS,

Defendant-Appellant

No.  06-5036

---

**Appeal from the United States District Court**
**for the Northern District of Oklahoma**
**(D.C. No. 04-CR-167-HDC)**

---

Fred Randolph Lynn, Tulsa, Oklahoma, for Defendant-Appellant.

Joseph F. Wilson, Assistant United States Attorney (David E. O'Meilia, United States Attorney, with him on the brief), Tulsa, Oklahoma, for Plaintiff-Appellee.

---

Before **KELLY**, **MURPHY**, and **HOLMES**, Circuit Judges.

---

**HOLMES**, Circuit Judge.

---

This case requires us to dismiss a criminal indictment because of the failure to comply with the requirements of the Speedy Trial Act of 1974 (the "Act"), 18 U.S.C. § 3161 *et seq*.

Following a jury trial, Defendant-Appellant DeMarco Deon Williams was convicted of two counts of possession with intent to distribute cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(iii); one count of possession of a firearm in furtherance of a drug-trafficking crime, in violation of 18 U.S.C. §§ 924(c)(1)(A) and 924(c)(2); and one count of possession of a firearm after a prior felony conviction, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Pursuant to a sentencing enhancement information filed by the government under 21 U.S.C. § 851(a)(1), Mr. Williams was sentenced to mandatory life in prison without the possibility of parole due to his three prior state felony drug convictions. Mr. Williams now appeals his conviction and sentence on numerous grounds, including a violation of the Act.

We have jurisdiction under 28 U.S.C. § 1291. Because we **REVERSE** and **REMAND** for a violation of the Act, we do not address Mr. Williams's other grounds for appeal.

## I. BACKGROUND

Mr. Williams was charged by indictment on October 7, 2004, and entered his first appearance on October 19, 2004. More than a year elapsed before his jury trial began on October 24, 2005. During this period, Mr. Williams filed numerous pretrial motions and, because he "experienced difficulty finding a lawyer with whom he could get along," changed counsel five times. Aplt.'s Br. at 3.

On November 19, 2004, Mr. Williams moved for a continuance citing the need of

his new counsel to "become familiar with the case." Dist. Ct. Doc. 22, at 1.[1] The district

court granted the continuance during a November 22, 2004 hearing. Accordingly, the

district court rescheduled the trial from December 6, 2004 to February 7, 2005 and

excluded the intervening sixty-three days for purposes of the Act.

Subsequently, on January 18, 2005, after Mr. Williams changed counsel again, the

district court sua sponte granted an ends-of-justice continuance noting, "the jury trial of

this matter is continued and the period of time occasioned by this delay from: 2/7/05 to

2/14/05 is excludable pursuant to [18] U.S.C. Sec. 3161(h)(8)(A)." Dist. Ct. Doc. 33

(Amended Scheduling Order, dated January 18, 2005).

On February 14, 2005, Mr. Williams filed a signed Speedy Trial Act Waiver

"freely and voluntarily" waiving his rights to a speedy trial and agreeing "that the dates

for the pretrial conference and the trial be continued in order to allow time [ ] for new

counsel to enter the case and prepare for trial or seek another resolution of the pending

charges." Dist. Ct. Doc. 37, at 1 (Waiver of Speedy Trial, dated February 14, 2005).

Further, the waiver stated that Mr. Williams had "no objection to this Court ordering that

all delays resulting from this continuance be excluded under the Speedy Trial Act and that

the ends of justice served by the continuance outweigh the interests of the public and Mr.

Williams in a speedy trial." *Id.*

---

[1]    Because the record provided by the parties did not include a number of
relevant documents, we refer to the necessary documents by their district court docket
number. These documents are properly part of the record on appeal because they were
filed in the district court. FED. R. APP. P. 10 (a)(1).

Subsequently, on July 19, 2005, the district court issued a summary order stating that the "jury trial of this matter is RESET and the period of time occasioned by this delay from: 2/14/05 to 9/12/05 is excludable pursuant to [18] U.S.C. § 3161(h)(8)(A)." Dist. Ct. Doc. 47 (Scheduling Order for Jury Trial, dated June 19, 2005).

On September 9, 2005, Mr. Williams moved to dismiss the case on speedy trial grounds arguing that he had been incarcerated for eleven months without trial. Mr. Williams claimed that he intended to waive only the period of time until he obtained new counsel and not until his new counsel was ready to proceed to trial. After holding a hearing on September 13, 2005, however, the district court found that Mr. Williams had waived his right to a speedy trial and denied his motion to dismiss.

Mr. Williams's jury trial commenced on October 24, 2005. He was subsequently convicted on all counts and sentenced to life in prison. Mr. Williams timely filed this appeal.

## II. DISCUSSION

### A. Standards

The Act generally requires a federal criminal trial to begin within seventy days from the filing of an information or indictment, or from the date of the defendant's initial appearance, whichever occurs later. 18 U.S.C. § 3161(c)(1). The Act serves two distinct interests: (1) to protect a defendant's right to a speedy indictment and trial, and (2) to serve the public interest in ensuring prompt criminal prosecutions. *Zedner v. United States*, 126 S.Ct. 1976, 1985 (2006) (emphasizing that Act intended not only to protect

4

defendant's right to speedy trial, but also "designed with the public interest firmly in mind"); *United States v. Vogl*, 374 F.3d 976, 982 (10th Cir. 2004). In balancing these two often-competing interests, the Act provides a detailed scheme under which a number of specified intervals are excluded from the seventy-day computation, thus tolling the speedy trial calendar. *See* 18 U.S.C. § 3161(h).

The statutory provisions most relevant to this case exclude time based upon the filing of pretrial motions, and for continuances filed in furtherance of the ends of justice. Specifically, 18 U.S.C. § 3161(h)(1)(F) provides for the exclusion of periods of "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion." Section 3161(h)(1)(J) further defines the parameters of subsection (F) by excluding periods of "delay reasonably attributable to any period not exceeding thirty days, during which any proceeding concerning the defendant is actually under advisement by the court."

In *Henderson v. United States*, 476 U.S. 321, 329 (1986), the Supreme Court interpreted subsection (F) and explicated its interplay with subsection (J):

> Subsection (F), written in the disjunctive, excludes time in two situations. The first arises when a pretrial motion requires a hearing: subsection (F) on its face excludes the entire period between the filing of the motion and the conclusion of the hearing. The second situation concerns motions that require no hearing and that result in a "prompt disposition." There, the promptness requirement was "intended to provide a point at which time will cease to be excluded, where motions are decided on the papers filed without hearing." S. Rep. No. 96-212, at 34. The "point at which time will cease to be excluded" is identified by subsection (J), which permits an exclusion of 30 days from the time a motion is actually "under advisement" by

5

the court. Without the promptness requirement in subsection (F), a court could exclude time beyond subsection (J)'s 30-day "under advisement" provision simply by designating the additional period as time "from the filing of the motion" through its "disposition" under subsection (F).

*Id.* Therefore, if a motion is one that does not require a hearing, the Act excludes time through the period of its prompt disposition, but only if that period does not exceed thirty days from the date the motion is taken under advisement. *See, e.g.*, *United States v. Willie*, 941 F.2d 1384, 1387 (10th Cir. 1991). After the thirty-day period lapses, the pendency of the motion, without more, will not act to exclude time. *See, e.g.*, *United States v. Pasquale*, 25 F.3d 948, 950-51 (10th Cir. 1994).[2]

The Act also permits a district court to grant a continuance and to exclude the resulting interlude if it finds, on the record, that the ends of justice served by granting the continuance outweigh the interests of the public and the defendant in a speedy trial. 18 U.S.C. § 3161(h)(8).[3] This provision affords a trial court substantial discretion to

---

[2]  As is evident from our subsequent discussion of pretrial motions, subsection (J)'s thirty-day limitation does not play a material role in this case. In addressing each pretrial motion in this case, the district court either disposed of the pertinent motions through hearings or decided them on the pleadings well within the thirty-day period.

[3]  18 U.S.C. § 3161(h)(8) provides:

The following periods of delay shall be excluded in computing the time within which . . . the trial of any such offense must commence:

> (8)(A) Any period of delay resulting from a continuance granted by any judge on his own motion or at the request of the defendant or his counsel or at the request of the attorney for the Government, if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the
>                                                                    (continued...)

6

best interest of the public and the defendant in a speedy trial. No such period of delay resulting from a continuance granted by the court in accordance with this paragraph shall be excludable under this subsection unless the court sets forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial.

(B) The factors, among others, which a judge shall consider in determining whether to grant a continuance under subparagraph (A) of this paragraph in any case are as follows:

    (i)    Whether the failure to grant such a continuance in the proceeding would be likely to make a continuation of such proceeding impossible, or result in a miscarriage of justice.

    (ii)    Whether the case is so unusual or so complex, due to the number of defendants, the nature of the prosecution, or the existence of novel questions of fact or law, that it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the time limits established by this section.

    (iii)    Whether, in a case in which arrest precedes indictment, delay in the filing of the indictment is caused because the arrest occurs at a time such that it is unreasonable to expect return and filing of the indictment within the period specified in section 3161(b), or because the facts upon which the grand jury must base its determination are unusual or complex.

    (iv)    Whether the failure to grant such a continuance in a case which, taken as a whole, is not so unusual or so complex as to fall within clause (ii), would deny the defendant reasonable time to obtain counsel, would unreasonably deny the defendant or the Government continuity of counsel, or would deny counsel for the defendant or the attorney for the Government the reasonable time necessary for effective preparation, taking into account the exercise of due diligence.

(C)    No continuance under subparagraph (A) of this paragraph shall be granted
(continued...)

accommodate periods of delay to address the specific needs of a particular case. *Zedner*, 126 S.Ct. at 1984. However, ends-of-justice continuances should not be granted cavalierly. *See United States v. Doran*, 882 F.2d 1511, 1515 (10th Cir. 1989) (observing that such continuances were "meant to be a rarely used tool" (internal quotation marks omitted) (quoting *United States v. Tunnessen*, 763 F.2d 74, 76 (2d Cir. 1985))).

The sanction for violation of the Act is mandatory dismissal of the indictment. 18 U.S.C. § 3162(a)(2). However, the district court retains "broad discretion whether to dismiss the indictment with or without prejudice." *United States v. Abdush-Shakur*, 465 F.3d 458, 462 (10th Cir. 2006), *cert. denied*, 127 S. Ct. 1321 (2007). When an indictment is dismissed without prejudice, the prosecution may seek a new indictment within six calendar months of the date of the dismissal, even if the period prescribed by the applicable statute of limitations has expired. 18 U.S.C. § 3288.

Compliance with the Act's requirements presents an issue of law which we review de novo. *Abdush-Shakur*, 465 F.3d at 461. We review the district court's underlying factual findings for clear error. *Id*. Finally, we review the district court's decision to grant an ends-of-justice continuance for abuse of discretion. *See United States. v. Gonzales*, 137 F.3d 1431, 1433 (10th Cir. 1998).

In this case, the speedy trial clock began to run on October 19, 2004, when Mr.

---

[3](...continued)
because of general congestion of the court's calendar, or lack of diligent preparation or failure to obtain available witnesses on the part of the attorney for the Government.

Williams made his initial appearance. By September 13, 2005, when the district court denied Mr. Williams's Motion to Dismiss based on speedy trial grounds, 330 days had elapsed. By the time Mr. Williams went to trial, 370 days had elapsed since his initial appearance. Thus, the central question is how many of the 370 days can be properly excluded under the Act. If the number of excludable days is less than 300, the indictment must be dismissed. *See* 18 U.S.C. § 3162(a)(2).

**B.      Excludable Delay Caused by Pretrial Motions**

Although both parties agree that numerous pretrial motions tolled the seventy-day period under the Act, they dispute specifically which periods of time were excludable under § 3161(h)(1)(F). Citing *United States v. Clymer*, 25 F.3d 824 (9th Cir. 1994), Mr. Williams argues that, by its terms, the Act excludes periods only when the delay in trial was the *result* of a pending pretrial motion. We disagree.

The Act's plain language contradicts Mr. Williams's argument as it specifically excludes "delay resulting from *any pretrial motion*, from the filing of the motion through the conclusion of the hearing on, or prompt disposition of, such motion." 18 U.S.C. § 3161(h)(1)(F) (emphasis added). We have held, contrary to Mr. Williams's assertion, that the time period during the pendency of a pretrial motion need not cause actual delay of the trial to be excluded under the Act. *Vogl*, 374 F.3d at 985 (noting that to read an "actual delay" requirement into the Act would contradict Supreme Court and Tenth Circuit case law insisting that exclusions for pretrial motions are automatic).

Additionally, *Clymer* "did not, and did not purport to, overrule [Ninth Circuit] . . .

9

cases holding that the time a motion is pending is excludable even when the pendency of a motion causes no actual delay in trial." *United States v. Vo*, 413 F.3d 1010, 1015 (9th Cir. 2005). Thus, the Ninth Circuit is among a majority of circuits which agree that "actual delay" of the trial is not required to exclude time attributable to a pretrial motion. *See United States v. Titlbach*, 339 F.3d 692, 698 (8th Cir. 2003); *United States v. Miles*, 290 F.3d 1341, 1350 (11th Cir. 2002); *United States v. Rodriguez*, 63 F.3d 1159, 1166 (1st Cir. 1995); *United States v. Arbelaez*, 7 F.3d 344, 347 (3d Cir. 1993); *United States v. Montoya*, 827 F.2d 143, 150-51 (7th Cir. 1987); *United States v. Wilson*, 835 F.2d 1440, 1443 (D.C. Cir. 1987); *United States v. Velasquez*, 802 F.2d 104, 105 (4th Cir. 1986). *Cf. Henderson*, 476 U.S. at 329-30 (holding that, for pretrial motions requiring a hearing, § 3161(h)(1)(F) on its face excludes the entire period between the filing of the motion and the conclusion of the hearing, whether or not a delay in holding the hearing is "reasonably necessary").

Applying § 3161(h)(1)(F) here, we conclude that 160 days were properly excluded. Specifically, we note that the following periods[4] are excluded because of pending motions:

---

[4] This chart is not a comprehensive list of all pretrial motions filed in this case. Time periods excludable by the pendency of unlisted motions overlap periods excluded by the listed motions, and therefore, our computations account for them.

| Pretrial Motion | Relevant | Period Excluded[5] | Excludable Days |
|---|---|---|---|
| Government's Motion for Detention | Dist. Ct. Doc. 1<br>Dist. Ct. Doc. 4 | October 19, 2004 –<br>October 25, 2004 | 7 days |
| Mr. Williams's Motion to Suppress and Dismiss | Dist. Ct. Doc. 5<br>Dist. Ct. Doc. 32 | November 2, 2004 –<br>January 11, 2005 | 71 days |
| Unopposed Motion to Withdraw as Counsel and for Appointment of New Counsel | Dist. Ct. Doc. 39<br>Dist. Ct. Doc. 40 | February 17, 2005 –<br>February 24, 2005 | 8 days |
| Mr. Williams's Motion for Ineffective Assistance of Counsel | Dist. Ct. Doc. 43<br>New Attorney Appointed[6] | June 13, 2005 –<br>June 17, 2005 | 5 days |

[5]     As previously noted, the district court must exclude delay arising "from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion."  18 U.S.C. § 3161(h)(1)(F).  Interpreting this language, several circuits hold that the date on which a pretrial motion is filed is excludable, as is its disposition date.  *See, e.g., United States v. Fonseca*, 435 F.3d 369, 372 (D.C. Cir. 2006) ("[T]he most natural reading of the phrase 'from the filing of the motion' is that the period of exclusion begins immediately 'from the filing.'  Fonseca's position, that the period begins from the 'day after' the filing, would require the insertion of language not in the statute."); *United States v. Daychild*, 357 F.3d 1082, 1092-93 (9th Cir. 2004) (same); *United States v. Johnson*, 29 F.3d 940, 942 n. 4 (5th Cir. 1994) (actual filing date and date of disposition are excludable).  *But see United States v. Thomas*, 49 F.3d 253, 256 (6th Cir. 1995) (date a motion was filed not included in calculation of excludable dates unless "that date was also the date an order was entered").  Although we have not directly addressed the issue, in *Vogl*, 374 F.3d at 983 n. 6, we excluded the date of filing.  We need not decide the issue here since regardless of whether the filing date is excludable, Mr. Williams's speedy trial rights were violated.  We nonetheless assume in our calculations that the excludable period "from the filing of the motion through the conclusion . . . of such motion" includes both the date of resolution of any pretrial motion *and* the date of filing.

[6]     Absent from the docket sheet is a court order granting Mr. Williams's June 16 Motion for Ineffective Assistance of Counsel.  Notwithstanding, the motion was effectively granted, when, as memorialized by a June 17, 2005 docket sheet notation, the court allowed a new attorney to enter the case for Mr. Williams.  *Cf. Pasquale,* 25 F.3d at 950-51 (for purposes of speedy trial computations using date on which counsel orally agreed to represent defendant and clerk's office sent him notice of the trial setting, instead of day formal appointment paperwork was filed).

11

| Pretrial Motion | Relevant | Period Excluded | Excludable Days |
|---|---|---|---|
| Mr. Williams's Motion to Dismiss | Dist. Ct. Doc. 49<br>Dist. Ct. Doc. 58 | August 1, 2005 –<br>September 13, 2005 | 44 days |
| Mr. Williams's Motion to Extend/Reset Hearings | Dist. Ct. Doc. 59<br>Dist. Ct. Doc. 65 | September 15, 2005 –<br>September 21, 2005 | 7 days |
| Mr. Williams's Sealed *Ex Parte* Motion for Leave to File Under Seal (relating to certain papers involving request for authorization to obtain expert and investigative services) | Dist. Ct. Doc. 66<br>Dist. Ct. Doc. 67 | September 27, 2005 –<br>September 28, 2005 | 2 days |
| Mr. Williams's Second Sealed *Ex Parte* Motion (request to seal papers relating to subpoena seeking internal affairs file of a testifying officer) | Dist. Ct. Doc. 69<br>Dist. Ct. Doc. 72 | September 29, 2005 –<br>September 30, 2005 | 2 days |
| Mr. Williams's Sealed *Ex Parte* Motion (seeking subpoena seeking internal affairs file of a testifying officer) | Dist. Ct. Doc. 74<br>Dist. Ct. Doc. 77 | October 3, 2005 –<br>October 5, 2005 | 3 days |
| Mr. Williams's Motion for *Jackson v. Denno* Hearing | Dist. Ct. Doc. 83<br>R., Vol. V, Tr. at 7-8 | October 14, 2005 –<br>October 24, 2005 | 11 days |
| **Total Excludable Days:** | | | **160 days** |

One pretrial motion we do not include in our calculation merits further discussion. On November 8, 2004, Mr. Williams's first attorney filed a "Motion for Disclosure Pursuant to Rules 404(b) and 609 of the Federal Rules of Evidence" ("Motion to Disclose"). Dist. Ct. Doc. 11. In this motion, by its terms, Mr. Williams sought a court order directing the government to disclose other-bad-acts and criminal-conviction impeachment evidence that the government intended to introduce against him or "any witness or defendant initially charged or uncharged," pursuant to Federal Rules of Evidence 404(b) and 609, respectively. *Id.* at 1.

The record, and more specifically the district court docket sheet, offers no sign that the government responded to the Motion to Disclose. Further, we find nothing to suggest

that the district court ruled on the motion. Indeed, on October 24, 2005, immediately prior to trial, the parties agreed that only two motions remained pending; Mr. Williams's Motion to Disclose was not among them.

If we were to construe Mr. Williams's Motion to Disclose as pending under subsection (F) from November 8, 2004 until the time of trial, October 24, 2005, the total excludable days under the Act clearly would exceed 300, thus validating the government's position that no Speedy Trial Act violation occurred. However, the law does not support such an outcome.

Instead, Mr. Williams's Motion to Disclose is reasonably characterized as "a pro forma request for discovery directed at the government, rather than an invitation for district court intervention." *United States v. Mentz*, 840 F.2d 315, 329 (6th Cir. 1988). As such, it is really "no more than an empty box, into which later-arising disputes can be placed." *United States v. Sutter*, 340 F.3d 1022, 1029 (9th Cir. 2003). *Cf. Vogl*, 374 F.3d at 982 (distinguishing our decision in *United States v. Gonzales*, 137 F.3d 1431 (10th Cir. 1998), which declined to exclude time regarding a motion, by noting that it "was not a true motion, as the court was not asked to do anything"). Consistent with this characterization, nothing indicates that the district court or the parties viewed the Motion to Disclose as requiring judicial action.[7] Certainly, Mr. Williams's string of attorneys did

_____

[7] Indeed, when an apparent discovery dispute subsequently arose concerning materially the same issues Mr. Williams raised in his Motion to Disclose, neither the parties nor the court viewed the Motion to Disclose as the predicate for any judicial relief.

(continued...)

13

not prompt the district court to rule on it.

Nonetheless, because the Motion to Disclose appears on the docket sheet, we must determine what, if any, significance to accord a dormant discovery motion in time computations under the Act. In *Mentz*, the Sixth Circuit concluded that such a motion "did not trigger the statutory exclusions for delay occasioned by the filing of a pretrial motion," noting that "the district court never held a hearing or ruled on the motion, and there is no indication that the motion was actually under advisement." 840 F.2d at 329 (internal quotation marks omitted). The court did not give the motion any effect in the speedy trial computations; the day the motion was filed and subsequent days were not to be deemed excludable because of the motion.

In *Sutter*, the Ninth Circuit declined to exclude such pro forma motions altogether

---

[7](...continued)
For all intents and purposes, it was a dead letter. Shortly after assuming Mr. Williams's representation, and approximately eleven months after previous counsel filed the Motion to Disclose, Mr. Williams's sixth attorney reiterated the substance of the Motion to Disclose in a September 15, 2005 letter to government counsel which he attached to an "Unopposed Motion for Continuance" filed on the same day. Dist. Ct. Doc. 59. (For unexplained reasons, this motion appears on the docket sheet as "Motion to Extend Reset Hearings."). In the letter, Mr. Williams's counsel's did not refer to the Motion to Disclose; rather, he acknowledged that he was "essentially begin[ning] the discovery process anew." *Id.*, Att. A, at 1. The district court addressed Mr. Williams's disclosure requests in a September 21, 2007 hearing. The district court concluded that, even given the late stage of the litigation, there was little need for specific judicial action given that the government's disclosure obligations were governed by the federal rules and the U.S. Constitution and did not require court action to become operational. *See* R., Vol. IV, Tr. at 9-11 (noting that Rule 404(b) required the government to provide notice of its intention to use other-bad-acts evidence and, "without prior notice . . . they can't use it"); *id.* at 11 (noting that the criminal-conviction impeachment evidence was "Brady stuff, that will all be supplied at the appropriate time").

14

from speedy trial consideration, but nevertheless recognized that such motions cannot be interpreted as excluding time indefinitely under Subsection (F) simply because they were filed and lie dormant on the docket sheet:

> Continuing indefinitely a *pro forma* discovery motion violates the principles of *Henderson*. *Henderson* indicates that motions that do not result in a hearing do not toll the Speedy Trial clock unless resolved within 30 days from the time the motion is taken under advisement. *See Henderson*, 476 U.S. at 329, 106 S. Ct. 1871 (" 'if motions are so simple or routine that they do not require a hearing, necessary advisement time should be considerably less than 30 days.' ") (quoting S. Rep. No. 96-212). An indefinite "continuance" of a motion for which no hearing is scheduled is tantamount to an indefinite advisement period.

340 F.3d at 1031. The *Sutter* court adopted a rule that "deemed" such motions to be "under advisement as of the date of the last hearing or filing of supporting papers, whichever is later, absent evidence that the motion was actually taken under advisement later than that." *Id*. at 1031-32. Where no action follows the filing of the motion, the *Sutter* rule would deem the motion to be taken under advisement on the day it is filed. The court stated:

> Under this rule, a *pro forma* discovery motion "continued" merely "in case" future discovery disputes arise is under advisement, because the motion is not set for a hearing nor is the court awaiting any ascertainable materials. Put another way, unless consideration of the motion is continued until a date certain or the happening of an event certain, the motion is deemed under advisement.

*Id.* at 1032.

The Sixth and Ninth Circuits have formulated two reasonable alternative approaches for dealing with dormant discovery-related motions like Mr. Williams's

15

Motion to Disclose.  *But cf. United States v. Franklin*, 148 F.3d 451, 455 (5th Cir. 1998) (rejecting both the Sixth and Ninth Circuit approaches in favor of a rule that deems a government response to a discovery motion to effect its "prompt disposition" under subsection (F), even though "there is no evidence in the record that [the motion] occupied the court's attention following the government's responses").  Significantly, neither method permits such motions to exclude time indefinitely.  We embrace this common ground because to allow dormant discovery motions to exclude time indefinitely poses a significant obstacle to the effectuation of the Act's purposes, particularly undercutting the public's interest in the prompt resolution of criminal cases.  *Cf. Zedner*, 126 S. Ct. at 1980 (recognizing the dual purposes of the Act); *United States v. Apperson*, 441 F.3d 1162, 1178-79 (10th Cir. 2006), *cert. denied*, 127 S. Ct. 1033 (2007) *and* 127 S. Ct. 1024 (2007) (same).

We need not decide whether the approach of the Sixth Circuit or Ninth Circuit, or indeed some other approach, is the most sound for determining whether the time associated with dormant discovery-related motions is properly excludable under subsections (F) and (J) of § 3161(h)(1).[8]  Instead, standing on the ground common to both approaches, Mr. Williams's Motion to Disclose cannot exclude time indefinitely – that is, from its filing until the start of his trial.  Correspondingly, neither approach permits the

---

[8]     We previously recognized the Sixth Circuit's position concerning pro forma discovery motions in an unpublished decision but did not "reach the question" of whether such motions could properly effect the exclusion of time under the Act.  *United States v. Arnold*, 1998 WL 823064, *3 n.2 (10th Cir. Nov. 30, 1998).

16

Motion to Disclose to exclude enough days to impact our speedy trial computations. Under the Sixth Circuit's approach, the motion would not result in the exclusion of even one day. Under the Ninth Circuit's approach, on the other hand, pursuant to the Act's subsection (J), only a maximum of thirty days is excludable. Thus, any excludable days associated with the Motion to Disclose added to the already properly excluded days would fall far short of the 300-day benchmark necessary to render Mr. Williams's trial timely.

In sum, we conclude that 160 days are properly excludable under § 3161(h)(1)(F).

## C.      Mr. Williams's Speedy Trial Act Waiver

In the 109 days between February 24, 2005 and June 13, 2005, the parties filed no pretrial motions to toll the speedy trial clock. The Government argues, however, that these days were properly excluded pursuant to Mr. Williams's Speedy Trial Act Waiver and the ends-of-justice continuances granted under § 3161(h)(8)(A). Accordingly, we next consider the effect of Mr. Williams's purported waiver of his speedy trial rights.

The Supreme Court recently considered the issue of waiver in the context of the Act. In *Zedner*, 126 S. Ct. at 1980, after being granted numerous continuances, the defendant (at the suggestion of the trial judge and through counsel) signed a blanket, prospective waiver of his rights under the Act, including his right to move to dismiss the indictment before trial based on a violation of the Act. *Id*. at 1981-82. After examining the text, purpose, and legislative history of the Act, the Court held that a defendant may not prospectively waive the Act's application. *Id*. at 1987.

17

The Court first observed that the detailed scheme of the Act did not expressly include a provision authorizing the exclusion of days pursuant to a defendant's waiver. *Id*. at 1985. Second, the Court emphasized the dual purposes of the Act in protecting not only a defendant's right to a speedy trial, but also the public's interest in the prompt disposition of criminal cases – an interest which would not be served "if defendants may opt out of the Act entirely." *Id*. The Court noted that its reasoning was consistent with the legislative history of the Act. *Id*. at 1985-86 ("Because of the Act's emphasis on that societal right, a defendant ought not be permitted to waive rights that are not his or hers alone to relinquish." (internal quotation marks omitted) (quoting S. REP. NO. 96-212, at 29 (1979))).

Finally, the Court rejected the argument that the Act's provision for waivers when defendants fail to move for dismissal prior to trial, *see* 18 U.S.C. § 3162(a)(2), demonstrates that defendants also may prospectively waive application of the Act. *Id*. at 1986. Notably, it stated that "[a]llowing prospective waivers would seriously undermine the Act because there are many cases – like the case at hand – in which the prosecution, the defense, and the court would all be happy to opt out of the Act, to the detriment of the public interest." *Id*. In contrast, reasoned the Court,

> The sort of retrospective waiver allowed by § 3161(a)(2) does not
> pose a comparable danger because the prosecution and the court
> cannot know until the trial actually starts or the guilty plea is actually
> entered whether the defendant will forgo moving to dismiss. As a
> consequence, the prosecution and the court retain a strong incentive
> to make sure that the trial begins on time.

*Id.*

Applying *Zedner*, we hold that Mr. Williams's avowedly free and voluntary waiver of "his right to a speedy trial" is invalid. Dist. Ct. Doc. 37 at 1. Consequently, the district court erred in ruling that Mr. Williams had prospectively waived his rights under the Act.[9]

## D.    Excludable Delay Due to Ends-of-Justice Continuances

Mr. Williams received three ends-of-justice continuances during the pendency of this case.[10] On appeal, Mr. Williams primarily challenges the district court's July 19, 2005 order granting an ends-of-justice continuance on the grounds that it (1) impermissibly operated retroactively from his execution of the "waiver" on February 14, 2005, and (2) did not contain adequate findings.[11]

First, we agree that the Act does not allow a district court to retroactively grant an

---

[9]    Although, at the time of its ruling, the district court did not have the benefit of the Court's opinion in *Zedner*, extant Tenth Circuit precedent mandated the same result. *See United States v. Saltzman*, 984 F.2d 1087, 1091 (10th Cir. 1993) (holding that a defendant did not have "the authority to waive the speedy indictment provision . . . [because it] belongs to both the defendant and society").

[10]    The district court did not expressly refer to the Act's ends-of-justice provision in granting the November 22, 2004 continuance. However, as discussed in some detail *infra*, the circumstances under which the November 22 continuance order was entered make it quite clear that the court sought to rely on the ends-of-justice provision.

[11]    Mr. Williams also argues that the district court erred by interpreting his waiver too broadly because he had intended it to apply only until he obtained counsel, and not, as the district court construed, until the counsel he obtained was ready to proceed to trial. Based on our resolution of this case and our holding that his waiver was invalid, we do not reach this contention.

19

ends-of-justice continuance. "Congress intended that the decision to grant an ends-of-justice continuance be prospective, not retroactive; an order granting a continuance on that ground must be made at the outset of the excludable period." *Doran*, 882 F.2d at 1516 (quoting *Tunnessen*, 763 F.2d at 77).

This conclusion logically follows from our oft-repeated observation that although the ends-of-justice findings mandated by the Act "may be entered on the record after the fact, they may not be made after the fact." *Apperson*, 441 F.3d at 1180 (internal quotation marks omitted) (quoting *Doran*, 882 F.2d at 1516); *United States v. Spring*, 80 F.3d 1450, 1456 (10th Cir. 1996). Accordingly, an ends-of-justice continuance must be granted prospectively.

In this case, the district court's July 19, 2005 order excluding the days from February 14, 2005 to September 12, 2005 operated both retroactively and prospectively. Insofar as the district court retroactively excluded the days following February 14, 2005 through July 19, 2005 under § 3161(h)(8)(A), we hold that it erred.[12]

---

[12]     We operate on two assumptions in calculating excludable days pursuant to an ends-of-justice continuance: first, retroactive periods necessarily encompass the day a district court enters the order (here, July 19); and second, when a district court calls for the exclusion period to run from a particular date "A" to a date "Z," the first day does not count as an excludable day.

The first assumption is consistent with commonly-understood meanings of the words "retroactive" and "prospective." *See* Black's Law Dictionary 1259, 1343 (8th ed. 2004) (defining in pertinent part "retroactive" as "extending in scope or effect to matters that have occurred in the past," and "prospective" as "[e]ffective or operative in the future").

To be sure, our second assumption does not find strong footing in the

(continued...)

Moreover, we agree that the district court failed to make adequate on-the-record findings to support its prospective exclusion of the days following July 19, 2005 through September 12, 2005. "The Tenth Circuit [] recognizes the importance of enunciating the ends of justice findings." *United States v. Saltzman*, 984 F.2d 1087, 1190 (10th Cir. 1993) (internal quotation marks omitted). "[I]t must be clear from the record that the trial court struck the proper balance when it granted the continuance." *Spring*, 80 F.3d at 1456 (internal quotation marks omitted) (quoting *Doran*, 882 F.2d at 1516); *see United States v. Johnson*, 120 F.3d 1107, 1111 (10th Cir. 1997). As noted, although ends-of-

_____

[12](...continued)
speedy trial case law. The courts appear not to have explicitly discussed this computation issue. When they have expressly noted the number of excludable days flowing from an ends-of-justice excludable period (e.g., from a given date "A" to date "Z"), the Supreme Court and our panels appear to have *not* counted as excludable the first day of the period. *See, e.g.*, *Zedner*, 126 S. Ct. at 1982 (indicating the period of excludable time between January 31 and May 2, 1997 was ninety-one days, rather than ninety-two); *United States v. Johnson*, 12 F.3d 1540, 1544-45 (10th Cir. 1993) (indicating the period of excludable time between June 1 and June 2, 1992 was one day, rather than two). *Cf. Apperson*, 441 F.3d at 1179-80 ("assuming, for purposes of argument, that § 3161(h)(8)(A) was relevant to the continuance of the hearing originally scheduled for December 20, 2000," and concluding that the district court would have properly excluded the time to January 10, 2001, which we counted as twenty-one days, rather than twenty-two); *Spring*, 80 F.3d at 1458 (in holding that the ends-of-justice continuance was not open-ended for an unreasonable period, court noted it ran from January 21, 1994 to February 1, 1995, ending "eleven days later," rather than twelve). There is some suggestion that other circuits have computed ends-of-justice time in this manner as well. *See United States v. Elkins*, 795 F.2d 919, 924 (11th Cir. 1986) (referring to the continuance between March 27 and April 11, 1985 as fifteen days, rather than sixteen).

We need not definitively rule, however, on the merits of either of these assumptions. Because of the large number of non-excludable days that we determine to be present, neither has the potential to materially affect the outcome in this case.

21

justice findings "may be entered on the record after the fact, they may not be made after the fact." *Apperson*, 441 F.3d at 1180; *see also Spring*, 80 F.3d at 1456 (noting that a district court "need not necessarily *expressly* conduct a balancing or use particular language, so long as the court gives some indication [of balancing] contemporaneous with the grant of the continuance, to which the later findings referred" (internal quotation marks omitted) (quoting *Doran*, 882 F.2d at 1517)).

The requirement of on-the-record findings serves two important functions. "First, it insures careful consideration of the relevant factors by the trial court. Second, the requirement provides the appellate court with an adequate record on which to review the district court's decision. Failure to address these issues on the record creates the unnecessary risk of granting continuances for the wrong purposes, and encourages overuse of this narrow exception." *Doran*, 882 F.2d at 1515 (internal quotation marks and citations omitted) (quoting *Tunnessen*, 763 F.2d at 77).

The district court's July 19 order does not contain any findings. Instead, it summarily reschedules the jury trial to September 12, 2005 and excludes the period of time occasioned by this delay from February 14, 2005 to September 12, 2005 under § 3161(h)(8)(A). We cannot conclude on this record that "the district court considered the proper factors at the time it granted the continuance." *Apperson*, 441 F.3d at 1180. Therefore, the February 14 to September 12 period

22

cannot be excluded under the Act's ends-of-justice provision.

For essentially the same reasons, we conclude that the ends-of-justice continuance granted on January 18, 2005 is invalid. The district court's statements – that the jury trial is continued and the intervening period is excluded under § 3161(h)(8)(A) – fall woefully short of the Act's requirements. The record is silent regarding whether the district court considered the relevant factors at the time it granted the continuance.

The November 22, 2004 continuance poses a somewhat closer question. Nonetheless, we are comfortable in concluding that the district court failed to issue adequate ends-of-justice findings. In response to Mr. Williams's November 11, 2004 motion asking for a continuance to allow his new attorney to "become familiar with the case," Dist. Ct. Doc. 22, the district court, noting the presence of Mr. Williams's new counsel, granted the continuance purporting to exclude the period from December 6, 2004 to February 7, 2005.

We have observed that although "the trial court must make explicit findings regarding why granting the continuance will strike a proper balance between the ends of justice and the best interest of the public and the defendant in a speedy trial," *Doran*, 882 F.2d at 1515, it "need not articulate facts which are obvious and set forth in the motion for the continuance itself." *United States v. Occhipinti*, 998 F.2d 791, 797 (10th Cir. 1993) (internal quotation marks omitted) (quoting *United States v. Lattany*, 982 F.2d 866, 879 (3d Cir. 1992)). In

23

*Occhipinti*, the government sought a continuance because conflicting trial settings hampered its ability to adequately prepare for the defendant's trial. The district court, in granting the continuance, recognized the government's need for time to prepare and explicitly stated that "the period of delay resulting from the continuance granted pursuant to this Order shall be excludable time as provided in 18 U.S.C. § 3161(h)(8) in that the ends of justice served by the granting of such continuance outweigh the best interest of the public and the defendant in a speedy trial." *Id.* at 797-98.

Although we noted that "a more thorough and explicit articulation might have better facilitated our review," we ultimately concluded that the district court's ends-of-justice findings were sufficient. *Id.* at 798. In particular, we observed that the district court expressly endorsed the reasons that the government raised in its motion; that is, it "articulated as the basis for that [ends-of-justice] conclusion its belief that a continuance was necessary to allow the government sufficient time to prepare for trial." *Id.* Further, "the court found specifically that granting the continuance struck the proper balance between the ends of justice and the best interest of the public and the defendants in a speedy trial." *Id.*

This case is similar to *Occhipinti* in two respects: first, the district court here responded to a motion for continuance that explicitly stated its basis for relief; and second, that basis for relief was one that would likely be contemplated

24

by the Act's ends-of-justice provision. *See* 18 U.S.C. § 3161(h)(8)(B)(iv) (authorizing a continuance to allow counsel adequate trial preparation time).

Critically, however, the similarity ends there. The district court's findings are wholly inadequate when judged against those in *Occhipinti.* And we did not even find *Occhipinti's* to be optimally "thorough and explicit." *See also Spring*, 80 F.3d at 1457 (though the district court's oral ends-of-justice findings were "not a model of clarity," holding them sufficient and observing, "what *is* clear is that the reason for granting the continuance is that new counsel would be unable to prepare for the upcoming trial").

Although the district court in this case mentioned the presence of new counsel in its November 22 order, it did not issue findings specifically addressing Mr. Williams's stated grounds for a continuance, i.e., his new counsel's claimed need for time to familiarize himself with the case. Nor did the district court otherwise comment on the issue of trial preparation time. Furthermore, the court's order does not so much as hint that it weighed the proper factors under the Act. Indeed, the court failed to cite the Act's ends-of-justice provision. Thus, we conclude that the district court did not properly exclude the period from December 6, 2004 to February 7, 2005 under the Act.

Even assuming that at least some of the serious deficiencies in the district court's three continuance orders could be ameliorated by subsequent on-the-record findings, the court's comments here are not up to the task. The record is

25

completely devoid of any ends-of-justice findings, either oral or written, bolstering the findings in the three orders.

During a September 13 hearing on Mr. Williams's Motion to Dismiss, the district court – relying on Mr. Williams's waiver and broadly interpreting it to exclude the days that would elapse until his counsel was ready for trial – noted that it was "not aware that anybody was ready for trial because Mr. Williams has objected to every lawyer he has had." R., Vol. III, Tr. at 4. This statement does not constitute a sufficient finding under the Act, especially in light of the district court's failure to balance the public's interest in a speedy trial and the ends of justice.[13] *Compare Spring*, 80 F.3d at 1457 (affirming district court, where *nunc pro tunc* order expressly balanced the ends-of-justice factors and court's previous oral rulings clearly stated a permissible reason for granting the continuance); *with Johnson*, 120 F.3d 1111-12 (reversing district court, where court's subsequent findings did not sufficiently show that the court's continuance rested at the time it was granted upon a proper consideration of the Act's ends-of-justice factors; "[a]ccepting such findings . . . would violate both the letter and the spirit of the Act"). Accordingly, we conclude that the district court's three ends-of-justice

---

[13]     At the Motion to Dismiss hearing, the district court commented that this was a simple case which "doesn't require very much work." R., Vol. III, Tr. at 5. The simplicity of the case is a factor that cuts against, not in favor of, granting an ends-of-justice continuance. 18 U.S.C. § 3161(h)(8)(B)(ii). *Cf. Zedner*, 126 S. Ct. at 1989 (holding that a court's "passing reference to the case's complexity" did not satisfy the requirements of the Speedy Trial Act).

continuances cannot be justified under the Act and the time periods covered by them are not excludable.

### III.  <u>CONCLUSION</u>

To summarize, the district court erred in denying Mr. Williams's Motion to Dismiss based on speedy trial grounds.  Accordingly, the indictment must be dismissed.  Of the 370 days that elapsed, 18 U.S.C. § 3161(c)(1) automatically authorized the exclusion of seventy days.  Further, we have concluded that an additional 160 days were properly excludable under § 3161(h)(1)(F) due to the pendency of pretrial motions.  However, because Mr. Williams's prospective waiver of his speedy trial rights was invalid and the district court failed to make adequate factual findings on the record in granting the three ends-of-justice continuances, the district court erred in excluding 140 days unauthorized by the Act.

The graphic below illustrates the magnitude of the violation:



On remand, in determining whether to dismiss the case with or without prejudice, the district court should consider the following non-exclusive factors: (1) the seriousness of the offense; (2) the facts and circumstances of the case which led to the dismissal; (3) the impact of a re-prosecution on the administration of the Act and on the administration of justice; and (4) prejudice to Mr. Williams. *See*

18 U.S.C. § 3162(a)(2); *United States v. Taylor*, 487 U.S. 326, 334 (1988).  A "violation of the speedy trial requirement, by itself, is not a sufficient basis for dismissal with prejudice."  *Abdush-Shakur*, 465 F.3d at 462.

We **REVERSE** Mr. Williams's conviction, **VACATE** his sentence, and **REMAND** to the district court for dismissal in accordance with this opinion.