FILED
United States Court of Appeals
Tenth Circuit

August 29, 2014

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

DOMINIC D. STEWART,

Defendant-Appellant.

No. 12-1253
(D. Colo.)
(D.C. No. 1:10-CR-00129-REB-1)

**ORDER AND JUDGMENT**[*]

Before **HARTZ, BALDOCK**, and **EBEL**, Circuit Judges.

Defendant Dominic Stewart appeals the district court's grant of a continuance of trial, contending that the continuance was not long enough. We affirm the district court because Mr. Stewart has not shown that the continuance as granted by the district court prejudiced him or failed to meet his needs.

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## BACKGROUND

While Mr. Stewart was serving a prison sentence at the "supermax" federal prison in Florence, Colorado for a previous conviction—homicide of a fellow inmate—he became involved in a fight with Gregory Joiner, another inmate at the supermax prison. Mr. Stewart punched Mr. Joiner and then repeatedly stomped on his head. Another prison inmate, James Duckett, helped Mr. Stewart during the fight by holding Mr. Joiner so that Mr. Stewart could knock Mr. Joiner to the floor. Mr. Joiner died in the hospital six days after this incident. Nearly five years later, a grand jury indicted Mr. Stewart for first- and second-degree murder, as well as assault causing serious bodily injury.

After the indictment was filed on March 9, 2010, the co-defendants, Mr. Stewart and Mr. Duckett, moved for one continuance, and all the parties jointly moved for two further continuances, all of which were granted by the district court. Following these continuances, there was "extensive pretrial litigation." Thereafter, Mr. Stewart moved for three ends of justice continuances under the Speedy Trial Act of 1974.[1] (R. Vol. I at 359-60.) He moved for the first continuance on October 31, 2011, in which he asserted that he required an additional 90 to 120 days to interview witnesses and to resolve the location of additional witnesses. Although the Government did not oppose the motion,

---

[1] Each of Mr. Stewart's three motions sought to exclude time from the timeline set out by Speedy Trial Act of 1974 by way of a so-called "ends of justice" continuance of that timeline. Additionally, as the district court recognized, each of Mr. Stewart's motions also implicated a continuance of the trial because the length of the requested continuance would implicate moving the trial date.

the district court held a hearing on the motion and denied it on December 30, 2011, setting a twelve-day trial to begin on February 21, 2012. The court concluded that a reasonable time remained before trial to interview all witnesses and that "Mr. Stewart ha[d] not made the specific, particularized showing necessary to meet the high threshold established by the Speedy Trial Act as interpreted by the Tenth Circuit." (R. Vol. I at 290.)

Mr. Stewart made his second motion for a continuance on February 6, 2012, just fifteen days before the scheduled start of trial. This motion again described defense counsel's difficulty in traveling to interview witnesses and requested an additional 60-90 days of time. Mr. Duckett opposed this motion, but the government did not. The district court held a hearing and denied this motion as well, stating that it would ensure that Mr. Stewart would be able to interview any witnesses on the government's will call witness list before trial. According to the court, Mr. Stewart had not shown the court why unspecified evidence potentially obtainable from other witnesses would be unique and non-cumulative such that Mr. Stewart would be prejudiced by the denial of the continuance.

Mr. Stewart's appeal focuses most on his third request for an ends of justice continuance filed February 15, 2012, just six days before the scheduled start of trial. That motion followed: 1) Mr. Duckett's entering of a guilty plea and substantial assistance agreement with the government whereby Mr. Duckett would testify against Mr. Stewart at trial; and 2) the pneumonia illness of Ms. Simonet, who acted as defense co-counsel

3

for Mr. Stewart's primary trial counsel, Mr. Hammond.  Defense counsel asserted that Mr. Duckett's plea deal required counsel to change the nature of their defense strategy and to examine Mr. Duckett's background comprehensively.  According to defense counsel, "documents ha[d] to be sought out, reviewed and analyzed. Potential witnesses ha[d] to be interviewed again, because no interview conducted prior to this date [had] focused on Mr. Duckett at all, let alone as a government witness." (R. Vol. I at 351.) The government did not oppose the motion, and even went so far as to acknowledge the "significant development" Mr. Duckett's actions represented. (R. Vol. IV at 292).

The district court held a hearing on this motion the next day, on February 16, and while acknowledging that there was a change in events, concluded that Mr. Stewart's motion had not made the particularized showing of the specific information he needed to obtain about Mr. Duckett such that a continuance was warranted. Noting that it was undisputed that Mr. Stewart was present and engaged in the fight in May 2005 resulting in the victim's death, the court held that Mr. Stewart had had sufficient time to carry out fully all investigation about Mr. Stewart's intent during the assault, which was the only disputed issue in the case. The court noted that if a long continuance were granted, the next available time in its docket calendar would be over a year in the future, in February 2013. As such, although the government did not oppose continuing the case until February 2013, the court concluded that it could not use its docket's congestion as an excuse to exclude time under the Speedy Trial Act. The district court expressed its conclusion that the trial proceed as scheduled on account of the difficulty in keeping track

4

of the witnesses in this case for an additional thirteen months. Although the district court noted that defense co-counsel might in fact be quite ill, defense counsel had not claimed he could not try the case on his own.

The district court thus concluded that defense counsel's arguments for a longer continuance were not meritorious and on February 16, 2012 granted only a six-day continuance, which moved the trial to February 27, 2012. Thus, the time remaining between the district court's decision granting the continuance and the rescheduled trial was eleven days. Mr. Duckett had agreed to testify two days before the district court's extension order, which gave defense counsel a total of thirteen days from that date with which to prepare for trial and carry out any further investigation required by Mr. Duckett's change of plea and agreement to testify against Mr. Stewart. The trial commenced and rescheduled and lasted for seven days, after which the jury convicted Mr. Stewart of second-degree murder, but not of first-degree murder as the government sought to prove, and not of manslaughter as the defense advocated.

## DISCUSSION

Although Mr. Stewart discusses all three continuances in his factual recitation, his argument in great part focuses on the district court's denial of his third continuance. We affirm the district court's exercise of discretion as to all three requests for continuances because Mr. Stewart has failed to show that he has been prejudiced and has failed to identify the "substantial favorable evidence" that he might have uncovered had the district court granted a longer continuance.

Each of Mr. Stewart's three motions sought to exclude time from the timeline set out by Speedy Trial Act of 1974 on grounds of an "ends of justice" continuance justification.

## I.

"The Speedy Trial Act is designed to protect a defendant's constitutional right to a speedy trial and serve the public interest of adjudicating criminal proceedings promptly." United States v. Lugo, 170 F.3d 996, 1000-01 (10th Cir. 1999). "The Act requires that a criminal defendant's trial commence within seventy days of the filing of the indictment or from the date the defendant first appears before a judicial officer of the court, whichever is later." Id. (quoting 18 U.S.C. § 3161(c)(1)). However, the Speedy Trial Act also provides in relevant part that:

> The following periods of delay shall be excluded . . . in computing the time within which the trial of any such offense must commence:
> . . . .
> (7)(A) Any period of delay resulting from a continuance granted by any judge . . . at the request of the defendant or his counsel or at the request of the attorney for the Government, if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial.

18 U.S.C. § 3161(h)(7)(A).

We review the district court's application of the legal standards of the Speedy Trial Act de novo, and review its factual findings for clear error. United States v. Hill, 197 F.3d 436, 441 (10th Cir. 1999). However, "[w]e apply an abuse of discretion standard to a district court's decision to grant an ends-of-justice continuance . . . ." United

6

States v. Toombs, 574 F.3d 1262, 1268 (10th Cir. 2009)

The court must balance the following factors when deciding whether a

§ 3161(h)(7)(A) "ends of justice" continuance is warranted:

> (i) Whether the failure to grant such a continuance in the proceeding would be likely to make a continuation of such proceeding impossible, or result in a miscarriage of justice;
> (ii) Whether the case is so unusual or so complex, due to the number of defendants, the nature of the prosecution, or the existence of novel questions of fact or law, that it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the time limits established by [the Act];
> (iii) Whether, in a case in which arrest precedes indictment, delay in the filing of the indictment is caused because the arrest occurs at a time such that it is unreasonable to expect return and filing of the indictment within the period specified in section 3161(b), or because the facts upon which the grand jury must base its determination are unusual or complex;
> (iv) Whether the failure to grant such a continuance in a case which, taken as a whole, is not so unusual or so complex as to fall within clause (ii), would deny the defendant reasonable time to obtain counsel, would unreasonably deny the defendant or the Government continuity of counsel, or would deny counsel for the defendant or the attorney for the Government the reasonable time necessary for effective preparation, taking into account the exercise of due diligence.

18 U.S.C. § 3161(h)(7)(B)(i) - (iv).

In Toombs, 574 F.3d at 1271-72, we summarized this circuit's recent law and the

moving parties' burden in securing an ends of justice continuance under the Speedy Trial

Act:

> Our decisions in [United States v. Williams, 511 F.3d 1044 (10th Cir. 2007)] and [United States v. Gonzales, 137 F.3d 1431 (10th Cir. 1998)] indicate that the record, which includes the oral and written statements of both the district court and the moving party, must contain an explanation of why the mere occurrence of the event identified by the party as necessitating the continuance results in the need for additional time.

7

> Williams, 511 F.3d at 1058; Gonzales, 137 F.3d at 1434-35. A record consisting of only short, conclusory statements lacking in detail is insufficient. For example, it is insufficient to merely state that counsel is new and thus needs more time to adequately prepare for trial or that counsel or witnesses will be out of town in the weeks preceding trial and therefore more time is needed to prepare for trial. Williams, 511 F.3d at 1058; Gonzales, 137 F.3d at 1434-35. Simply identifying an event, and adding the conclusory statement that the event requires more time for counsel to prepare, is not enough. Williams, 511 F.3d at 1058; Gonzales, 137 F.3d at 1434-35.

Toombs, 574 F.3d at 1271-72.

Here, regarding the Speedy Trial Act, Mr. Stewart argues only that the interest of the Act does not "trump the need for adequate defense investigation and preparation of a murder case." Aplt. Br. at 31. We conclude, however, that the district court properly balanced the statutory factors, and that the district court's denial of the first two motions and grant of only a six-day continuance with regard to the third motion for a continuance was properly within the court's discretion.

Regarding the first motion of October 31, 2011, Mr. Stewart had requested 90-120 days of additional time to interview a potential government "mystery witness" and another witness unable to be located by the Bureau of Prisons. We agree with the district court that Mr. Stewart had sufficient time between October 31, 2011 and February 21, 2012—the schedule date of the trial—to interview those witnesses. Mr. Stewart did not provide sufficient explanation of why his request to receive a continuance would outweigh either the public interest in a speedy trial or his co-defendant Mr. Duckett's interest in a speedy trial. Nor did Mr. Stewart show that denial would result in a

8

"miscarriage of justice." Although the district court designated the case complex because of the length of time that had passed since the events giving rise to this case, that designation does not alone require an ends of justice continuance.

We also conclude that the district court properly denied Mr. Stewart's second motion under the ends of justice standard. The district court held an ex parte hearing on the second motion during which the court heard additional evidence before denying it in a written order addressing the relevant precedent. Many of the witnesses Mr. Stewart wished to further interview were on the government's will call list, and the district court ordered that Mr. Stewart be afforded an opportunity to interview those witnesses. Of those witnesses not on the will call list that Mr. Stewart wished to interview, two refused to speak with Mr. Stewart's counsel. As to the "mystery witness" that Mr. Stewart referred to in his first and second motions, the government declared that this witness was only a witness against Mr. Duckett and would not be called against Mr. Stewart. Moreover, Mr. Stewart did not show why interviewing the witnesses listed in paragraphs five, six, eight, and thirteen of his motion, who were not on the will call witness list, would provide new information such that it outweighed the strong public interest in a speedy trial or would cause a miscarriage of justice. See 18 U.S.C. § 3161(h)(7)(B)(i) - (iv). Based on the record before us, we do not think the district court abused its discretion when it denied Mr. Stewart an ends of justice continuance based on the second motion.

Nor did the district court abuse its discretion when it excluded only a short amount of time from the Speedy Trial Act's timeline in response to Mr. Stewart's third motion.

9

That third motion and Mr. Stewart's subsequent arguments on appeal are made up in large part of conclusory statements, which do not measure up to the Speedy Trial Act's standards for granting an ends of justice continuance. As we have explained, "[s]imply identifying an event, and adding the conclusory statement that the event requires more time for counsel to prepare, is not enough." Toombs, 574 F.3d at 1271-72. Mr. Stewart states that he would have liked the opportunity to discredit any evidence from Mr. Duckett that Mr. Stewart did not act with a provoked passion. Although this third motion asserted that "failure to grant an ends of justice continuance would result in a miscarriage of justice," and "would deny Mr. Stewart's counsel the time necessary to effectively prepare, taking into account the exercise of due diligence," (R. Vol. I at 352), neither Mr. Stewart's pleadings nor his arguments at the district court's hearing explained how interviewing additional witnesses could have provided more information beyond mere credibility attacks, which Mr. Stewart was able to muster convincingly with the six-day continuance granted.

Mr. Stewart's failure to indicate the amount of time he required in order to prepare for trial bolsters our conclusion that he did not established that he lacked sufficient time to prepare. Although Mr. Stewart moved for a 90-120 day continuance in his first motion and a 60-90 day continuance in his second motion, which he incorporated into his third motion, the third motion did not state explicitly the amount of time he wished excluded and instead concluded, "[c]ounsel will attempt to determine the exact nature of time required to meet this new evidence as soon as possible." (R. Vol. I at 353). Mr. Stewart

10

also relied on defense co-counsel's sickness, but defense counsel did not assert that he would not be able to try this case with his co-counsel ill. Thus, in his third motion, Mr. Stewart failed to show prejudice, a potential for a miscarriage of justice, or an inability for counsel to prepare diligently. We agree with the district court that, applying the ends of justice factors for excluding time under the Speedy Trial Act, the district court did not abuse its discretion.

## II.

In addition to excluding six days of time from the Speedy Trial Act's clock, the district court's ruling continued the trial for six days.[2] Given that "[w]e review the denial of a continuance motion for an abuse of discretion," United States v. Orr, 692 F.3d 1079, 1100 (10th Cir. 2012), we will review the grant of a continuance that Mr. Stewart now contends was not long enough under the same abuse-of-discretion standard as an outright denial. "Error only exists if the district court's decision was arbitrary or unreasonable *and* materially prejudiced the defendant." Orr, 692 F.3d at 1100 (emphasis in original). We carry out this review while keeping in mind the following factors:

> [1] the diligence of the party requesting the continuance; [2] the likelihood that the continuance, if granted, would accomplish the purpose underlying the party's expressed need for the continuance; [3] the inconvenience to the opposing party, its witnesses, and the court resulting from the continuance; [4] the need asserted for the continuance and the harm that appellant might suffer as a result of the district court's denial of the continuance.

---

[2] Mr. Stewart's third motion for a continuance did not assert how many days of continuance he was requesting.

11

Id. (quoting United States v. Rivera, 900 F.2d 1462, 1475 (10th Cir.1990) (en banc)). The last of these "Rivera factors" is the most important. Id. at 1101. In order to show that the district court abused its discretion, the defendant must "identify what 'substantial favorable evidence' he would have uncovered and utilized at trial through additional investigation and preparation." United States v. Pursley, 577 F.3d 1204, 1229 (10th Cir. 2009) (quoting Rivera, 900 F.2d at 1476); see also Rivera, 900 F.2d at 1476 (denying the continuance after concluding that "the defendant made no showing at trial nor has he made any specific allegation on appeal as to precisely what would have been discovered from the documents if he had been granted a continuance").

The district court did not abuse its discretion in granting Mr. Stewart's motion for a shorter continuance than he requested. In Mr. Stewart's case, the fourth (and most important) and the second factors are decisive, because Mr. Stewart has failed to "identify what 'substantial favorable evidence' he would have uncovered and utilized at trial through additional investigation and preparation." Pursley, 577 F.3d at 1229 (quoting Rivera, 900 F.2d at 1475). As such, we cannot say that the longer continuance would have accomplished Mr. Stewart's need for the continuance or that the shorter continuance harmed Mr. Stewart.[3]

On appeal, Mr. Stewart asserts in a conclusory manner that he needed a continuance so that he could develop "a crucial piece of evidence" that might make "the

---

[3] For the same reasons, we think the district court properly denied Mr. Stewart's earlier motions for continuances.

difference between being convicted of second-degree murder or the lesser included offense of voluntary manslaughter." Aplt. Br. at 29-30. Mr. Stewart asserts that he wanted to attack the government's case that was based on disproving that Mr. Stewart "had acted with provoked passion when assaulting Mr. Joiner." Id. at 30. Mr. Stewart argued that Mr. Duckett provided essential evidence that Mr. Stewart was not acting in a provoked passion. He cites to the government's closing arguments, ostensibly contending that they reference Mr. Duckett's testimony:

> [Mr. Stewart] stepped away, and then he went back at it. That's not provoked passion, ladies and gentlemen. That is an icy steel resolve to get done what the plan is.

Aplt. Br. at 30 (citing R. Vol. VI at 1726.)

The record reveals, however, that other witnesses' testimony told very similar stories, including that of Mr. Malloy, a Bureau of Prisons prisoner in the same unit and present during the fight at issue. Mr. Malloy related an account about Mr. Stewart's actions that day, which suggested he was not in a provoked passion:

> Q. Where was Stewart hitting Joiner?
> A. . . . .
>     Joiner for the most part, is trying to get [Mr. Duckett's] chokehold off him, trying to pull it off. You know, Stewart is right there. He's standing up over here, and he's just hitting him. I don't know why, but for some reason he was wearing workout gloves first, but he took the workout gloves off like he was frustrated or something and went back to hitting him. He was just pounding him as hard as he could.
> Q. You said—you just used the word "frustrated" in reference to Mr. Stewart taking off his gloves. Why do you say that?
> A. I mean, it was—I mean, you're sitting there and hitting somebody. You're in the middle of a fight. It was kind of like—and he just—you know, he stood up and pulled them off. It was just kind of, like—he went

13

back at it. It was like—kind of like he didn't feel like he was getting enough, you know, with the gloves on. He could do a better job with them off.

(R. Vol. IV at 667-68.) This testimony mirrors the government's assertion in closing argument that "[Mr. Stewart] stepped away, and then he went back at it. That's not provoked passion, ladies and gentlemen. That is an icy steel resolve to get done what the plan is." (Id. at 1726.) In fact, the government's closing arguments incorporated Mr. Stewart's removal of his gloves in the sentence immediately following the one Mr. Stewart's brief quotes.

Mr. Malloy also testified that, moments later, while the fight was still ongoing, he returned to his cell on command of the guards, and so could hear the fight and see only some things. He testified that from his vantage point in his cell, he saw Mr. Duckett come away from the fight, heard a loud boom, and then heard Mr. Duckett say "Stop. You're going to kill him." (R. Vol. IV at 673.) Mr. Malloy equated this booming noise to Mr. Stewart stomping on Mr. Joiner's head. (Id.) He observed that after Mr. Duckett's statement, the booming noise stopped for a time and then resumed a little while later, suggesting that Mr. Stewart had resumed stomping on Mr. Joiner's head. Mr. Malloy's testimony suggests a break in the fight during which Mr. Stewart may have been reflecting and losing whatever provoked passion he initially may have possessed.

Mr. Stewart relies on United States v. Heron, 564 F.3d 879 (7th Cir. 2009), which reversed a district court's denial of continuance where a defendant charged with possession with the intent to distribute cocaine changed his account the day before trial to

14

testify against the accomplice he had recruited. Id. at 881-82. The Heron defendant changed his story from a portrayal of the accomplice "as a reluctant participant who was coaxed into continuing the drug trip with offers of money" to an account in which the accomplice participated in two prior drug-running enterprises. Id. at 882-83. Our sister circuit held that this last-minute change in testimony of these two events "was more than enough to cast [the defendant] in the jury's eyes as an active participant in the drug trip" and noted that investigation of the veracity of the defendant's claims would be possible within a reasonable time. Id. It therefore reversed the denial of the continuance. Id. We note that in Heron, the accomplice's defense requested the continuance in order to investigate the specific facts of these two alleged drug runs, and the drug-running defendant was the essential and only witness whose testimony was establishing the character of the accomplice's relationship with him. See id. at 881-83. Mr. Stewart's situation is distinguishable. First, Mr. Stewart did not assert what "substantial favorable evidence" from specific instances he would investigate if given a long continuance. Mr. Stewart asserted only that he needed "adequate time for *defense investigation*," (Aplt. Reply Br. at 4 (emphasis in original)). Additionally, unlike in Heron, Mr. Duckett's evidence was not unique evidence that, on its own, convinced the jury that Mr. Stewart had not acted in a provoked passion.[4]

---

[4] Heron reversed the district court's denial of a continuance based on the Seventh Circuit's seven-factor test, 564 F.3d at 883, and Mr. Stewart's situation is distinguishable on those grounds as well. In contrast to the situation in Heron, where all but two factors

Continued . . .

Moreover, Mr. Stewart does not demonstrate that his defense theory changed after Mr. Duckett's plan to change his testimony, and he thus showed no real need for additional investigation, on which Heron in part relied. See Heron, 564 F.3d at 883.[5] Mr. Stewart's defense theory all along was that Mr. Stewart was provoked. The absence of a change in the defense theory suggests that defense counsel had sufficient time with the six-day continuance to carry out its zealous defense of Mr. Stewart, as was the case in the United States v. Aviles, 623 F.2d 1192, 1196-97 (7th Cir. 1980), relied on by the government. In Aviles, defense counsel "asserted that since he had not been advised until two days prior to trial that [two defendants] would become government witnesses, the defense would require additional time to alter its trial strategy and to procure additional impeachment witnesses." Id. at 1194. The Seventh Circuit affirmed the district court's denial of a continuance because there were no unsuccessful attempts to interview any

_____

Cont.

counseled in favor of a continuance, see 564 F.3d at 883, in Mr. Stewart's case: his counsel had sufficient time to prepare for cross examination of Mr. Duckett by re-interviewing important witnesses; there was little likelihood of prejudice from the refusal to grant a longer continuance because Mr. Stewart did not show what specific evidence he would have looked for with more time; there was little likelihood that the continuance would have satisfied Mr. Stewart's needs because those needs were unknown. The only Seventh Circuit factor counseling for the continuance was that the district court had declared the case complex.

[5] That the government agreed with Mr. Stewart that Mr. Duckett's cooperation "occasion[ed] a significant case from Mr. Stewart's perspective in terms of trial preparation," (R. Vol. IV at 290), is not determinative of the district court's discretion. The district court granted the six-day continuance for Mr. Stewart because of this significant development.

16

needed witnesses. Id. at 1197.

Here, the district court addressed Mr. Stewart's requests for more time to interview witnesses in response to his first two motions. Mr. Stewart's third motion focused on the need to re-interview certain witnesses in light of Mr. Duckett's agreement to testify, but in arguing that motion, defense counsel admitted that "I could continue to investigate this case for a number of months. There are witnesses who, more than likely, aren't going to be called, but in an abundance of caution, try to go out and see them. But I can't tell you at face value that they would be fundamental to Mr. Stewart's case." (R. Vol. IV at 293.) This was not a showing of particularized need, but the district court nevertheless ensured that the essential witnesses would be made available to Mr. Stewart to interview before they testified, through the government's cooperation and through writs of *habeas corpus ad testificandum*. Defense counsel also had access to Mr. Duckett's criminal history (provided by the district court) and to Mr. Duckett's pre-trial statements (provided by the government). The record shows that the efforts of Mr. Stewart's counsel before trial in fact led to extensive cross-examination. Given the evidence available for defense counsel's investigation in the thirteen days between Mr. Duckett's agreement to testify and the rescheduled trial start date, Mr. Stewart was not prejudiced.

The regrettable illness of defense co-counsel does not create a need for a longer continuance. The district court found that "[t]here [had] been no claim that [defense counsel] could not try this case himself without co-counsel or co-counsel in a limited

17

role." (R. Vol. IV at 294.) On appeal, Mr. Stewart's counsel who spearheaded the defense does not show why he needed more than the six additional days' continuance.

Summarizing our analysis of these two factors, Mr. Stewart has not demonstrated that he was harmed by the six-day continuance the district court granted, or that if a longer continuance were granted, it would accomplish his purpose in providing him with a more zealous defense than that with which he was afforded.

Regarding the diligence of counsel factor, although we do not demand that defense counsel should have had a contingency plan fully prepared for the eventuality that Mr. Duckett would change his mind and testify at trial after years of denying that he would do just that, we believe that Mr. Stewart's counsel could have done some minimal analysis of Mr. Duckett's criminal history and how the possibility of his decision to offer self-serving testimony might be dealt with.[6] As the district court pointed out, last-minute plea deals with the government, and even more last-minute decisions about whether to testify

---

[6] Mr. Stewart cites <u>United States v. Kieffer</u> 681 F.3d 1143, 1152 n.2 (10th Cir. 2012) for the proposition that the defendant should be given the benefit of the doubt in those cases in which the trial court cuts off the defendant and thereby prevents him from making an adequate record. Aplt. Br. at 22 (citing <u>Kieffer</u>, 681 F.3d at 1152 n.2). However, <u>Kieffer</u> is distinguishable, first because it dealt with Fed. R. Crim. P. 29(a), and second because in <u>Kieffer</u> the defendant renewed his motion at the close of evidence and was then cut off, <u>id.</u>, which was not the case here. Rather, in Mr. Stewart's case, he failed to move to make a record of counsel's diligence after the trial court pronounced its ruling, although in response to the court's question of whether there was "[f]urther business on behalf of Mr. Stewart?," he raised another argument and thus demonstrated he knew that he had an opportunity to raise the issue. (R. Vol. IV at 300.) Mr. Stewart thus failed to sufficiently raise the issue and make a record before the district court when the court presented him with a second opportunity to do so, so he can claim no "benefit of the doubt." <u>See</u> Aplt. Br. at 22.

at trial, are not uncommon. In any event, the district court's extension of a six-day continuance, which resulted in a preparation period of eleven days before trial, gave counsel sufficient time to explore Mr. Duckett's testimony.

As to the last remaining factor, we also conclude that extending the trial as requested by Mr. Stewart would have caused some inconvenience to the parties. Continuing the trial for the amount of time Mr. Stewart requested would have required a continuance of thirteen months, from February 2012 to March 2013. The court noted that such a continuance would leave a three week open space in the court's docket that would not be able to be used by other litigants because of the short notice. The parties would have had to keep track of the various witnesses both inside and out of the Bureau of Prisons for an additional year about events that happened in 2005. In short, the inconvenience to the parties counsels against continuing the trial.

Taking all these together, we conclude that the district court did not abuse its discretion in granting a six-day continuance that provided eleven days before the beginning of trial to complete preparations.

## CONCLUSION

We AFFIRM the district court's grant of a continuance.

ENTERED FOR THE COURT

David M. Ebel
Circuit Judge

19